## NATIONAL ADVERTISING COMPANY

v.

## The UNITED STATES.

No. 47–71.

United States Court of Claims.

Dec. 18, 1974.

Joseph A. Maun, St. Paul, Minn., attorney of record, for plaintiff. James W. Brehl, St. Paul, Minn., of counsel.

Kenneth R. Boiarsky, Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, for defendant. Gilbert E. Andrews, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and NICHOLS and KASHIWA, Judges.

## OPINION

KASHIWA, Judge:

This is a suit for the recovery of federal corporate income taxes and interest, plus statutory interest, for the calendar years 1962 through 1965 involving the investment credit provisions of the Internal Revenue Code of 1954. We hold for the plaintiff upon the material facts stipulated.

Plaintiff is engaged nationwide in the business of erecting, maintaining, and renting outdoor advertising displays, commonly known as billboards. The billboards display advertising of the products and services of plaintiff's customers. The billboards owned by plaintiff were constructed on property leased to plaintiff by the property owners.[1] The terms of the leases generally provided for a

1. Except in 10 to 15 instances hereinafter discussed.

period of ten years which may be terminated by the lessor upon 90 days' notice to the plaintiff if the occupied property was required for permanent construction by the lessor, or may be terminated by plaintiff upon 15 days' notice to the lessor if the property, under specified conditions, became unsuited for plaintiff's displays or if such use was prevented by law. The leases provided that the displays remained plaintiff's property and that plaintiff had a right to remove them.

The removal of plaintiff's displays was accomplished in the following manner after the display framework was disassembled. The wood pole uprights set in sacrete were predominantly pulled from the ground using a chain and a 16-ton jack except in some instances where they may have been manually removed; otherwise, they were removed by cutting off each pole at ground level or one foot below ground level. The wood pole uprights set in poured concrete were removed by cutting them off at ground level or by breaking off the concrete to one foot below ground level and cutting off the pole at that point. The steel beam or steel pole uprights, all set in concrete, were removed similarly. The shopping center displays were removed by disassembling the framework and horizontal members and then removing the thru-bolts, and unclamping the collar from the light standard.

In the stipulation of facts in the *Alabama Displays, Inc.*[2] cases, the signs were segregated into three categories based on the supporting structure: wood poles, steel I beams, and "A" frames. In this case the approach differed. The stipulation was not by the type of sign but was based on inventory control numbers. Fortunately, in this case, actual pictures representative of the signs in dispute were submitted.

The displays were segregated into four accounts numbered 272, 274, 276, and 278. In accounts # 272 and # 274 the displays were supported by wood poles. In account # 278 the displays were supported by steel and wood supports. Two rooftop signs, separately dealt with in the next paragraph, were included therein. For the wood and steel beam types, this court's holding and reasoning in the *Alabama* cases decided on even date herewith apply. We hold that these displays of the plaintiff are tangible personal property under § 48(a)(1)(A) of the Internal Revenue Code of 1954 and plaintiff is entitled to investment credit. This disposes of a major portion of the case.[3]

**2.** Alabama Displays, Inc. v. United States, Ct. Cl., 507 F.2d 844. Kentucky Displays, Inc. v. United States, Ct.Cl., 507 F.2d 844. Tuscaloosa Advertising, Inc. v. United States, Ct.Cl., 507 F.2d 844. These three suits were consolidated. Opinion this day. (Hereinafter referred to as *Alabama* cases.)

**3.** The stipulated facts show that 10 to 15 locations where the displays were installed were owned by the plaintiff. This is a de minimis amount in relation to the thousands of displays in issue but we feel that we should discuss these displays to show that we were not unmindful of this fact difference. The defendant in its brief did not raise any question as to whether these signs should be separately dealt with. During argument defendant's counsel was specifically questioned as to whether the stipulated method of classifying signs by inventory number confused some of the issues. Both plaintiff and defendant seemed content with the stipulation. In Tomlinson v. Lefkowitz, 334 F.2d 262, 266 (5th Cir. 1964), cert. denied, 379 U.S. 962, 85 S.Ct. 650, 13 L.Ed.2d 556 (1965), the court stated with relation to omitted stipulated issues of fact and law as follows:

" * * * The parties agreed by stipulation at a pretrial conference what issues of fact and law were to be decided by the trial court. This point was not included in those issues remaining open for consideration. Thus the appellant should not be permitted to raise the issue here for the first time. * * * "

It was clear from the stipulation that most of the signs in this case were of the wooden pole variety. Some were little more than enlarged-size placards and where there were signs of special significance such as those attached to shopping center lighting standards, they were described in detail and called to the attention of this court. It is said that

There are several types of signs in this case which were not considered in the *Alabama* case. Though very minor in relation to total cost, we deal with them separately. First account # 276 contained displays of metal frames and hardware to be placed on lighting standards (poles) in shopping center parking lots. The lighting standards were not owned by the plaintiff but by the shopping center owner. The displays were mounted by use of a two-piece collar attached by two bolts. A picture of the display was included in the exhibits. On the face of it, these displays appear to be tangible personal property, the attachment not being significant enough to warrant further discussion. Secondly, account # 278 contained two rooftop signs. They are stipulated to be removable. These are tangible personal property under § 48(a)(1)(A) according to Treas.Reg. § 1.48–1(c) which states that "Thus, such property as * * * neon and other signs, which is contained in or attached to a building constitutes tangible personal property for purposes of the credit allowed by section 38." Therefore, plaintiff is entitled to investment credit for both of these types of signs.

CONCLUSION OF LAW

Upon the foregoing opinion, the facts as stipulated by the parties, the briefs and oral argument of counsel, the court concludes as a matter of law that the plaintiff is entitled to recover on all of its claims and judgment is entered to that effect. The amount of recovery will be determined in subsequent proceedings pursuant to Rule 131(c).

"An inference may be drawn not merely from what a stipulation says but from what it fails to say." Vanity Fair Paper Mills, Inc. v. Federal Trade Commission, 311 F.2d 480, 485 (2d Cir. 1962). Therefore, construing the entire stipulation under the circumstances above mentioned, we take the slight reference to the 10 to 15 signs on locations owned by plaintiff to mean that the fact that these few signs were situated on property owned by plaintiff was not significant. We include these few signs with those in above-mentioned accounts 272, 274, and 278. They are tangible personal property. We do not, in this opinion, treat this category of signs as creating any separate issue of permanence. Billboards which are on taxpayer's property may or may not be considered permanent under other circumstances and facts, especially where the parties raise the issue specifically. We deem it unnecessary to make such a decision under the stipulation and circumstances before this court in this case.