KAHN, J.T.C.
Taxpayers seek a reduction of the assessment on real property for the year 1983, which assessment was affirmed by the Bergen County Board of Taxation as follows:
Land $ 414,700
Improvements $1,405,900
Total $1,820,600
The subject property, located in the Borough of Northvale and known as Block 908, Lot 1, is improved with two commercial buildings and an attached garage. The first building, constructed in 1965, contains a 38-lane bowling alley with cocktail lounge, snack bars and attached garage. The second building contains racquetball and tennis courts, and nautilus and exercise rooms.
*296 The taxpayer and municipality each offered the testimony of a qualified appraisal expert. Both experts utilized the income and reproduction cost approaches but agreed that the latter was more appropriate since the subject was special-use property. They also agreed that the highest and best use of the property is its present use but indicated that it has an alternate use as a warehouse facility.
INCOME APPROACH
Taxpayer’s expert offered no comparable rentals under the income approach but instead relied solely upon the existing leases and his own rent estimate for owner-occupied space. The leases admitted into evidence contain signatures of tenants appearing to be members of taxpayers’ family. The witness was, therefore, unable to conclude that the leases were entered into at arm’s length. His analysis, therefore, fails to establish a market rent for the property.
 The municipality’s expert presented leases for three allegedly comparable office and warehouse buildings located in a neighboring community. He admitted, however, that the properties are not very comparable to the subject. Accordingly, I find that the municipality has also failed to satisfy the threshold question of economic rent. Having failed to find economic rent from the evidence offered by either party, no further inquiry into the income approach is necessary and the income approach is rejected as a valuation technique in this case. Rodwood Gardens, Inc. v. Summit, 188 N.J.Super. 34, 39, 455 A.2d 1136 (App.Div.1982).
REPRODUCTION COST APPROACH
The remaining valuation technique is the reproduction cost approach which both experts agree is the most appropriate in this matter.
Taxpayers’ reproduction cost approach may be summarized as follows:
*297 Bowling Alley
Average Class C
Base Cost $ 32.36
Height Multiplier 1.170
Floor Area—Perimeter .845
Refined Base Cost $ 31.99
Sprinklers L22
$ 33.21
Current Cost Multiplier 1.04
Local Multiplier 1.16
Adjusted Cost to 10/84 $ 40.06
Time Multiplier to 10/82 .849
Cost at 10/82 $ 34.01
Building Area 34,481
Reproduction Cost 10/82 $1,172,699.00
Less Depreciation—42.5% 498,397.00
Building Value $ 674,302.00
SAY $ 674,300.00
Tennis/Racquet Ball Building
Average Grade
Base Cost $ 29.25
Current Cost Multiplier 1.04
Local Multiplier 1.16
Adjusted Cost to 10/84 $ 35.29
Time Multiplier to 10/82 .849
Cost at 10/82 $ 29.96
Building Area 42,950
Reproduction Cost 10/82 $1,286,782.00
Less Depreciation—27.5% 353,865.00
Building Value—10/1/82 $ 932,917.00
SAY $ 932,900.00
*298 Garage
Class C—Low Cost
Base Cost $ 16.35
Height .960
Floor Area—Perimeter 1.094
Refined Base Cost $ 17.17
Current Cost Multiplier 1.01
Local Multiplier 1.16
Adjusted Cost to 10/84 $ 20.12
Time Multiplier to 10/82 .849
Cost at 10/1/82 $ 17.08
Building Area 3,904
Reproduction Cost 10/1/82 $ 66,680.00
Less Depreciation 28,339.00
Building Value 10/1/82 $ 38,341.00
SAY $ 38,300.00
SUMMARY
Land Value $534,000
Bowling Alley Bldg. 674,300
Tennis/Racquetball Bldg. 932,900
Garages 38,300
Site Improvements 25,000
Total Property Value $2,204,500
Taxpayers’ expert obtained his reproduction cost data, including the base cost, multipliers and depreciation, from the Marshall Valuation Service. The square footage of the various buildings was obtained through actual physical measurements taken by the expert.
The taxing district’s reproduction cost approach may be summarized as follows:
*299 I. Bowling Alley With Cocktail Lounge, Offices, Garages and Shop_
Base cost for 36,462 sq. ft. at $29.28 a sq. ft. = $1,067,600.00
Base cost of 3,070 sq. ft. at $20.00 a sq. ft. = 61.400.00
Base cost 38 alleys, automatic pin setters, ball return etc. at $20,000.00 an alley = 760,000.00
Total Reproduction Cost $1,889,000.00
Less: Depreciation based on building’s age of 17 years at 2% a year or 34% = 642.260.00
Indicated Value of Bowling Alley, etc. $1,246,740.00
II. Racquetball, Tennis & Health Club
Base cost for 40,992 sq. ft. at $41.00 a sq. ft. = $1,680,672.00
Base cost 2,750 sq. ft. mezzanine at $20.50 a sq. ft. = 56.375.00
Total Reproduction Cost $1,737,047.00
Less: Depreciation based on age of 11 years at 2% a year = 22% = 382.150.00
Indicated Value of Racquetball, etc. $1,354,897.00
III. Add: Other Improvements
Paving, Landscaping, etc.
Paving 28,000 sq. ft. etc. Depreciated Value = $ 10,000.00
Total Value of Other Improvements $ 10,000.00
SUMMARY
I. Bowling Alley Building, etc. $1,246,740.00
II. Racquetball, Tennis, etc. 1,354,889.00
III. Other Site Improvements 10,000.00
Total Indicated Value of Improvements $2,611,629.00
*300 SAY $2,611,000.00
Indicated Value of Land $534,000,00
Total Value $3,145,000.00
The municipality’s expert obtained his reproduction cost data from the Dodge Building Cost Calculator and Valuation Guide for the bowling alley and the Dodge Construction System Costs for the Racquetball and Health Club. Square footage and depreciation were obtained by actual physical measurements and examination by the witness.
The parties stipulated to a land value of $534,000 but differed in their valuation of the improvements. The differences are in square footage, cost factors, depreciation and the characterization of the alleys, pinsetters and ball returns.
I find taxpayer’s square footage more accurate based on its expert’s physical measurement of the subject property and detailed analysis in both his report and testimony. I also find the Marshall Valuation System and its detailed breakdown for the various facilities a more accurate guide to estimating the reproduction cost and accordingly, agree with taxpayer’s figures. However, I agree with the municipality’s depreciation figure since it was based on a cost manual and the conclusions of its expert after a visual inspection. Municipality’s expert inspected the premises but relied totally on the figures in the cost manual in estimating depreciations. It is more appropriate in estimating depreciation for the expert to examine the property personally to determine the type of structure, its maintenance requirements, effective age and state of deterioration. A manual is deficient in this respect as it fails to account for factors which are unique to the subject property. A combination of the manual and the expert’s own findings lends itself to a more accurate and reliable estimate of depreciation. American Institute of Real Estate Appraisers, The Appraisal of Real Estate (8 ed. 1983) at 473.
*301 The primary area of disagreement between the parties concerns the characterization of the bowling alley, pinsetters and ball returns. Taxpayers’ expert contends that these items are personal property and should not be subject to real property taxation. As support for this proposition he introduced the lease to the subject premises which called for the tenant to remove these items at the expiration of the lease term. Additionally, he presented extensive testimony on the removability of the items. He testified that the pinspotters sit on their own leveling legs and are attached to the concrete floor by a bracket with one pin to prevent the machine from moving. The lanes themselves sit two feet above the concrete floor and rest on wood supports which are not attached to the floor. The ball returns rest on similar wood supports and run below the lanes. He concluded that the pinsetters, lanes and ball returns can be removed with little or no damage to them or the concrete floor and can be carried out of the building through existing doorways.
The municipality’s expert contends that the items discussed above are part of the realty and should be taxed as real property. He undertook no physical examination of the various items to determine their removability and offered no testimony to rebut the findings of taxpayers’ expert that they were in fact removable with no damage to the underlying structure. Instead, he agreed that the items could be taken out of the building, without comment on resulting damage, but focused his analysis on the economic impact of such a move. His main contention is that the removal of the items would be economically infeasible since the existing use is superior to the use resulting from removal of the items, a warehouse.
Defendant cites Wiesenfeld v. Taxation Div. Director, 3 N.J.Tax 3 (Tax Ct.1981) as controlling. In Wiesenfeld the court classified the bowling alleys, pinsetters and ball returns involved therein as real property. While this seems to dispose of the issue, Wiesenfeld is distinguishable on its facts. The court found from the record “that removal of the bowling lanes and equipment ... would necessitate not only extensive repairs to *302 the building but also comprehensive redesign of the structure,” id. at 15, and concluded that they could not be removed without material injury to the realty. The testimony from both experts in the present case indicates that the equipment can be removed with little damage to the realty. Taxpayers’ expert offered extensive, uncontroverted testimony on the removability of the equipment.
This, distinction is important because business personal property is defined in the Business Personal Property Tax Act, N.J.S.A. 54:11A-1 et seq., as:
goods and chattels so affixed to real property as to become part thereof and not to be severable or removable without material injury thereto [N.J.S.A. 54:11A—2(b)(2) ]
Defendant claims that “material injury” as used in the statute refers to functional or economic injury, a test known as the “institutional doctrine.” However, this test was specifically rejected in Bayonne v. Port Jersey Corporation, 79 N.J. 367, 399 A.2d 649 (1979), in which the Court stated that fixtures would only be subject to property tax if their removal would “do irreparable or serious physical injury or damage to the freehold.” Id. at 378, 399 A.2d 649.
Bayonne v. Port Jersey Corporation was recently relied upon in Sta-Seal Inc. v. Taxation Div. Director, 5 N.J.Tax 272 (Tax Ct.1983), aff’d 6 N.J.Tax 345 (App.Div.1984), certif. den. 97 N.J. 644, 483 A.2d 169 (1984) and Stem Brothers Inc. v. Alexandria Township, 6 N.J.Tax 537 (Tax Ct.1984), in which Judge Conley rejected the material injury analysis of Wiesenfeld and instead analyzed the removal of certain fixtures in terms of the possibility of incurring “serious physical damage” to the freehold.
The evidence in this case demonstrates that the equipment can be removed from the subject property without serious physical damage to the freehold. The time and effort required to do so is not important, nor is the extent of damage likely to occur to the personalty. Stem Bros., Inc., supra at 544-545. I, therefore, find from the evidence presented that the alleys, *303 pinsetters and ball returns are personal property not subject to real property taxation.
 The reproduction cost approach is generally most appropriate either when the structure is relatively new or when it is a special-use property not frequently exchanged in the market. The Appraisal of Real Estate, supra at 444. The subject property is improved with older structures but both parties agree they are special use, although not single-use structures. An adequately presented economic analysis may have been useful in this instance, particularly in light of this court’s finding that the equipment contained in the bowling alley is personal property. The evidence indicates that the building could have been used without the equipment as a warehouse structure, and comparable warehouse structures could have been analyzed. However, two factors weigh in favor of utilizing the cost approach. First, both parties proffered and presented detailed analyses utilizing this approach. Second, and more importantly, the parties agree that the highest and best use for the property is as a bowling alley/health club. This differentiation is obvious from the breakdown in the cost manuals used by the parties, both of which had specific cost breakdowns for bowling alley and racquetball/health club buildings. Therefore, the cost approach is satisfactory as a valuation technique in this matter and the presentations by the parties thereunder are sufficient from which to draw conclusions as to true value.
Based on the above findings, the true value of the subject property for 1983, computed under the reproduction cost approach, is as follows:
Bowling Alley
Cost $1,172,699
Less depreciation (34%) 398,718
Total $ 773,981
*304 Garage
Cost $ 66,680
Less depreciation (34%) 22,671
Total $ 44,009
Tennis/Raequetball Building
Cost $1,286,782
Less depreciation (22%) 283,092
Total $1,003,690
Site Improvements $ 25,000
Value of Improvements $1,846,680
Land Value 534,000
Total Value $2,380,680
The ratio of assessment ($1,820,600) to true value ($2,380,680) is 76.47%. This is above the upper limit of the common level range of 74% for 1984, thereby requiring relief. The assessment should be reduced to $1,523,600 (rounded), allocated to the land and improvements in the same ratio as true value. The resulting allocation is as follows:
Land $ 341,800
Improvements $1,181,800
Total $1,523,600
The Clerk of the Tax Court is directed to enter judgment accordingly.