679 A.2d 141

THE R.C. MAXWELL COMPANY, A NEW JERSEY CORPORATION, TENANT, AND SCOLA, INC., OWNER, PLAINTIFFS-APPELLANTS, v. GALLOWAY TOWNSHIP, DEFENDANT-RESPONDENT, AND DIRECTOR, DIVISION OF TAXATION, INTERVENOR-RESPONDENT.

Argued February 26, 1996—Decided July 30, 1996.

548

*Jeffrey M. Hall* argued the cause for appellants.

*Ronald I. Bloom* argued the cause for respondent (*Vasser, Spitalnick & Bloom,* attorneys).

*Joseph L. Yannotti,* Assistant Attorney General, argued the cause for intervenor-respondent (*Deborah T. Poritz,* Attorney General of New Jersey, attorney; *Julian F. Gorelli,* Deputy Attorney General, on the brief).

*Theodore L. Abeles* argued the cause for amicus curiae, Outdoor Advertising Association of New Jersey (*Tompkins, McGuire & Wachenfeld,* attorneys).

The opinion of the Court was delivered by

HANDLER, J.

## I

The R.C. Maxwell Company ("Maxwell") is a New Jersey corporation that has conducted outdoor advertising since 1894. It currently owns about 900 outdoor advertising displays, most· of which are in Atlantic and Mercer counties.

Four Maxwell-owned wooden billboards are on land owned by Scola, Inc., in Galloway Township, Atlantic County, New Jersey. Maxwell leases the property for the express purpose of erecting its billboards.

Maxwell's billboards have traditionally been taxed by the State as business personal property pursuant to the Business Personal Property Act (the "BPP"), *N.J.S.A.* 54:11A–1 to –21, which was repealed in 1993. Maxwell also pays licensing and permit fees to the State pursuant to the Outdoor Advertising Act, *N.J.S.A.*

54:40–50 to –73 (repealed in 1992) and more recently the Roadside Sign Control and Outdoor Advertising Act, *N.J.S.A.* 27:5–5 to –26 (replacing *N.J.S.A.* 54:40–50 to –73).

On November 25, 1991, the Attorney General issued an advisory opinion on behalf of the Director, Division of Taxation, that billboards were taxable as real property under *N.J.S.A.* 54:4–1. Galloway Township proceeded, in 1992, to make an omitted assessment for real property taxes owed by Scola, Inc., for the Maxwell billboards that were erected on its property. The original assessment for Scola's plot, identified as Block 1204.01, Lot 7.02, was $86,700. After re-assessing the billboards as taxable real property, the assessment of taxable land value increased to $90,400. Maxwell and Scola ("plaintiffs" or "taxpayers") challenged the assessment before the Atlantic County Board of Taxation ("Board"), but the Board upheld Galloway Township's omitted assessment.

Plaintiff appealed the Board's judgement to the Tax Court. The Outdoor Advertising Association of New Jersey appeared as *amicus curiae* and the Director, Division of Taxation, intervened.

The Tax Court granted summary judgment to Galloway Township, holding that the billboards were taxable as real property. 13 *N.J. Tax* 519 (1993). The Appellate Division affirmed the Tax Court decision. 15 *N.J. Tax* 187 (1995). We granted the taxpayers' petition for certification. 142 *N.J.* 456, 663 *A.*2d 1363 (1995).

## II

The taxpayers contend that billboards are personal property that is exempt from taxation as real property. Subsection (a) of *N.J.S.A.* 54:4–1 classifies improvements "consisting of personal property" that are "affixed to the real property" as "within real property" and therefore taxable.

The taxpayers argue that under this statutory framework, billboards should be classified not as improvements to realty but only as personal property because (1) they can be removed

without material injury to either the real property to which they are affixed or to the billboard itself, and (2) they are ordinarily not intended to be affixed permanently to real property. 13 *N.J. Tax* at 526. The plaintiffs also argue that the billboards qualify under the statute's "machinery, apparatus, or equipment" exception, subsection (b) of *N.J.S.A.* 54:4-1, because the billboards are apparatuses used in the outdoor advertising business that neither support, shelter, contain, enclose, nor house people or property. These contentions require an extremely fact-specific analysis, which was undertaken by the lower courts.

Maxwell's billboards are comprised primarily of wood with some metal components such as bolts and nails. They use the A-frame construction methodology. 13 *N.J. Tax* at 522. The advertising copy is located on what is known as the face of the billboard, which rests on a grid of vertical planks known as uprights and horizontal planks known as stringers. Backbracing connects the uprights to anchors, which are planks that are almost entirely stuck into the ground. Three of the billboards in this case have 12–foot by 25–foot faces and one has an 8–foot by 15–foot face. The faces are made of either wood panels or sheet metal on a wood frame. *Ibid.*

An A-frame constructed billboard consists of: (1) seven wooden uprights; (2) seven wooden anchors; (3) seven wooden down-braces; (4) a wooden platform; (5) wooden crossbracing; (6) wooden stringers; and (7) the sign face. *Id.* at 522–23. Illuminated billboards, also implicated in this case, would have the following additional components: (1) a one hundred amp service panel with timer clock; (2) six quartz or fluorescent fixtures; (3) a maximum of 110 lineal feet of rigid pipe; (4) a service entrance cable; and (5) a ground rod. *Id.* at 524.

Construction and maintenance of Maxwell's billboards are carried out in the following manner:

> Once a sign location is laid out, the billboard is constructed on site. For the 14 foot × 48 foot-face sign, seven 4 inch by 6 inch uprights are installed to a depth of six feet. The area is backfilled and tamped down. Seven anchors are likewise installed about 12 to 15 feet behind the uprights. Downbracing is then erected and

bolted to the anchors at the top of the uprights. The stringers are then attached horizontally to the uprights and, lastly, the face is attached to the stringers.

The backbraces are bolted to the uprights and anchors at both ends of the structure. Likewise, the platform bracing is also bolted. The stringers are nailed to the uprights. The other components are nailed to each other with galvanized nails. The galvanized nail used in this fashion makes it work much like a wood screw. This construction technique is faster and cheaper but nearly as effective as if the lumber had been screwed together.

The uprights, because in direct contact with the earth and subject to accelerated decay, must be replaced about every ten years. The entire structure would be replaced within eight to ten years on average, assuming there has been a lease renewal.

The sign face carries the advertising copy. A face made of wood panels is attached to the stringers by use of the galvanized nails which are crimped. The crimping provides strength to the jointed parts. A sheet-metal face is mounted on a frame which is then attached to the stringer. For sheet-metal faces, the advertising copy is placed on sheets of paper which is applied to the sign face up to six layers. For the wooden faces, the advertising copy is painted-on either at the location or at Maxwell's shops in Atlantic City or Trenton.

[13 *N.J. Tax* at 523–24.]

Because approximately 85% of Maxwell's billboard signs are made of wood, there is a constant need for new or recycled replacement parts. *Id.* at 524. Maxwell regularly repairs or replaces billboard parts that either are damaged by the elements or succumb to rot. Generally, wooden billboard components have a life of eight to ten years. *Ibid.* Maxwell maintains that wooden components not claimed by the elements are nearly all salvageable. *Ibid.* The main uprights, anchors, and sign faces are all completely reusable. And, if the wood remains sound, approximately 80% of the downbracing, platform, crossbracing, and stringers can likewise be reused in other billboards. Thus, Maxwell contends that if a billboard location is lost, it is able to disassemble the billboard and salvage a high percentage of its wooden parts for reuse at another site. *Id.* at 524.

### III

The statute under which the billboards have been taxed, *N.J.S.A.* 54:4–1, provides:

Real property taxable under this chapter means all land and improvements thereon and includes personal property affixed to the real property or an appurtenance thereto, unless

    a. (1) The personal property so affixed can be removed or severed without material injury to the real property;

    (2) The personal property so affixed can be removed or severed without material injury to the personal property itself; and

    (3) The personal property so affixed is not ordinarily intended to be affixed permanently to real property; or

    b. The personal property so affixed is machinery, apparatus, or equipment used or held for use in business and is neither a structure nor machinery, apparatus or equipment the primary purpose of which is to enable a structure to support, shelter, contain, enclose or house persons or property.

## A.

Initially, the statute calls for an inquiry into the difference between an "improvement" and "personal property affixed to the real property." It provides that: "Real property taxable under this chapter means all land and *improvements thereon* and includes *personal property affixed to the real property* or an appurtenance thereto, unless [such personal property meets the tests of either subsection (a) or (b)]." (emphases added). Thus, only affixed personal property, not improvements, can avoid being taxed by meeting subsections (a) and (b).

The term "improvements thereon" as used in *N.J.S.A.* 54:4–1 is not defined in the statute. New Jersey decisional law on what constitutes an improvement harkens to over a century ago. *Parker v. Wulstein,* 48 *N.J. Eq.* 94, 96, 21 *A.* 623 (Ch. 1891), essayed a comprehensive definition of an improvement:

The word "improvement" may be said to comprehend everything that tends to add to the value or convenience of a building or a place of business, whether it be a store, manufacturing establishment, warehouse, or farming premises. It certainly includes repairs of every description. It necessarily includes much more than the term "fixtures." Indeed, so far as I am able to understand, it is difficult to conceive any additions made to a building by a tenant for his own convenience in the conduct of the business which may not properly be included in the term "improvements."

That definition in the context of the current statute suffers from overbreadth. It seemingly transforms any addition to real prop-

erty, even a repair, into an improvement. Under that definition, nothing could ever qualify under *N.J.S.A.* 54:4–1's other category, "personal property affixed to the real property." [1]

The difference between "relative" or "general" permanence cannot be the distinguishing factor between improvements and attached personal property because subsection (a) clearly states that affixed personal property can have as much "general" permanence as improvements can.

▮ We believe that the Legislature intended a more restrictive definition of improvement when it created a distinction between the terms "improvement" and "personal property affixed to real property." *N.J.S.A.* 54:4–1 makes sense only when "improvement" is construed as an addition to land that is obviously, unmistakably, and inherently permanent. *Accord Alabama Displays, Inc. v. United States*, 205 *Ct.Cl.* 716, 507 *F.*2d 844 (1974); Treasury Regulation § 1.48(c) (1964) (providing "the term 'tangible personal property' means any tangible property except land and *improvements thereto*, such as buildings or other *inherently permanent structures*. ... Thus, buildings, swimming pools, paved parking areas, wharves and docks, bridges, and fences are [improvements]." (emphases added)).

The "inherently permanent" character of improvements accords with the sense of *N.J.S.A.* 54:4–1 because so defined an improvement can be distinguished from personal property affixed to real property. The distinction would, therefore, remove billboards from the category of "improvements" to real property. *National Advertising Co. v. United States, supra,* 205 *Ct.Cl.* 728, 507 *F.*2d 850 (1974) (referring to billboards as "personal property attached to realty"); *Alabama Displays, Inc. v. United States, supra,* 507 *F.*2d at 847 (same); *Whiteco Indus., Inc. v. Commissioner,* 65 *T.C.*

---

[1] Nevertheless *Parker* was relied on as recently as 1990 by a United States Bankruptcy Court that was trying to decipher New Jersey's law on what constitutes an improvement to settle a contract dispute. *In re Gain Elecs. Corp.,* 117 *B.R.* 805, 812–13 (Bankr.D.N.J.1990).

664, 671, 1975 *WL* 3184 (U.S.T.C.1975) (ruling billboards are tangible personal property rather than improvements); *N.J.A.C.* 16:6–2.3(e) (referring specifically to "advertising signs" as "personal property" in connection with relocation assistance).

## B.

Because billboards are considered personal property affixed to real property, they may qualify for the real estate tax exception in *N.J.S.A.* 54:4–1(a). That subsection has three requirements: the taxpayer must prove that the affixed personal property can be removed (1) "without material injury to the real property," (2) "without material injury to the personal property itself," and (3) that the affixed personal property "is not ordinarily intended to be affixed permanently to real property."

There is no dispute that the first requirement is satisfied because billboards can be removed without materially injuring the real property. The parties dispute the other two requirements: whether billboards can be removed without being materially injured and whether billboards are ordinarily intended to be permanently affixed to land.

## i.

■ On close review, we determine that Maxwell's wooden billboards can be removed without being materially injured. The Court in *City of Bayonne v. Port Jersey Corporation,* 79 *N.J.* 367, 399 *A.*2d 649 (1979), adopted the restrictive definition of "material injury" under the BPP, which considers personal property to be real property only if it is affixed to the land whereby its removal would cause "irreparable or serious physical injury or damage to the freehold." *Id.* at 378, 399 *A.*2d 649 (involving three construction cranes mounted on railroad tracks). *See Minetto v. Northvale Borough,* 7 *N.J. Tax* 293 (1985) (finding bowling lanes, pinsetters, and ball returns could be removed without material injury and were thus taxable as personal property), *aff'd,* 210 *N.J.Super.* 312, 509 *A.*2d 807, *certif. denied,* 105 *N.J.* 520, 523 *A.*2d 164 (1986); *Stem Bros., Inc. v. Alexandria Tp.,* 6 *N.J. Tax* 537

(1984) (determining above- and below-ground oil storage tanks to be personalty and not part of the real estate); *Sta–Seal, Inc. v. Taxation Div. Director,* 5 *N.J. Tax* 272 (1983), *aff'd,* 6 *N.J. Tax* 345 (App.Div.), *certif. denied,* 97 *N.J.* 644, 483 *A.*2d 169 (1984) (finding entire asphalt plant weighing 50 tons and 50 feet high to be movable and properly classified as business personal property); *Union Tp. v. Taxation Div. Director,* 176 *N.J.Super.* 239, 1 *N.J. Tax* 15, 422 *A.*2d 803 (1980) (finding 60,000–lb. truck axle scale, 2,000–lb. platform scale, Globe lift, and 40,000–lb. air/oil ram lift to be removable without material injury and therefore personalty pursuant to the *Bayonne* test); *RCA Corp. v. East Windsor Tp.,* 1 *N.J. Tax* 481 (1980) (holding removable crane trackage, TV monitoring security system, and air conditioning equipment not to be taxable as real property).

In *Chevron, U.S.A., Inc. v. Perth Amboy,* 9 *N.J. Tax* 205 (1987), the Tax Court adopted the *Bayonne* test for the "material injury" prongs of subsection (a)'s real property test. The court concluded that the process units, instrumentation, piping, wiring, and storage tanks (but not their concrete footings) at an oil refinery were "removable and severable without material injury to the items themselves or the real property pursuant to c. 117." 9 *N.J. Tax* at 241. (However, Chapter 117 also required the property to pass the "ordinarily intended" test before it could be held to escape local real estate taxation; and on this count, the court determined that the refinery's property failed.).

Furthermore, the Division of Taxation itself defines "material injury" as "physical damage to the personal property sufficient to destroy its utility." *N.J.A.C.* 18:12–10.1. A billboard's utility is not destroyed when it is removed. Approximately 80% of a billboard's support structure is salvageable on removal. The advertising face, which is the key component of a billboard, is not damaged by removal and is normally completely reusable.

██ The trial court failed to use the narrow definition of "material injury" in holding that billboards were materially injured when disassembled. The trial court instead focused on how

the billboards cannot be wholly reused as a single replacement or "completely reassembled piece by piece" but at best be a rebuilt billboard because significant wood portions decay before disassembly. 13 *N.J. Tax* at 531. There is no requirement that the disassembled parts be wholly reassembled. *See Chevron, supra,* 9 *N.J. Tax* at 240–41 (finding no material injury even if, for economic reasons, piping and wiring replaced when refinery structure reassembled). In addition, disassembling the billboards does not destroy the utility of the wood parts; rather, years of wear render portions of the wood unusable.

Case law supports the conclusion that billboards are removable without material injury to themselves. *See Whiteco, supra,* 65 *T.C.* at 672 (determining that the billboard could be removed without serious damage despite "wastage" incurred by "that portion of the poles surrounded by concrete."); *Manderson & Assocs., Inc. v. Gore,* 193 *Ga.App.* 723, 389 *S.E.*2d 251 (1989) (holding billboards to be personalty rather than real property, given factual finding that billboards could be readily moved from site to site with proper equipment notwithstanding that superstructure of certain boards weighed 25,000 to 30,000 pounds, and that typical board was 45 to 50 feet high); *In re Minneapolis Community Dev. Agency,* 417 *N.W.*2d 127, 131 (Minn.Ct.App.1987) ("URA does not create a right to compensation for appellant's billboards, where Minnesota case law precludes compensation, because the billboards are removable personal property"); *State v. Teasley,* 913 *S.W.*2d 175, 181 (Tenn.Ct.App.1995) (stating that Uniform Relocation Assistance Act "relates only to structures which are real property, not to outdoor advertising billboards because they are removable").

We determine that Maxwell's wooden billboards are not "irreparably" damaged on removal because certain support beams are not salvageable or that disassembly is required. Within the meaning and intendment of the statute the billboards may be removed without material injury.

## ii.

The third requirement of *N.J.S.A.* 54:4–1(a) is that the billboards cannot be ordinarily intended to be affixed permanently to the real estate. Under *Chevron,* outward appearances and physical facts are relevant considerations. Other relevant factors are the custom and usage of the trade.

The ultimate determination depends on an objective view of what the "ordinary intent" was for installing the billboards. *Chevron, supra,* 9 *N.J. Tax* at 243 (focusing on whether "reasonable person" would have ordinarily intended piping at oil refinery should remain permanently affixed). For example, in *NYT Cable TV v. Audubon Borough,* 230 *N.J.Super.* 530, 534, 553 *A.*2d 1368 (App.Div.), *aff'g* 9 *N.J. Tax* 359 (1987), *certif. denied,* 117 *N.J.* 646, 569 *A.*2d 1344 (1989), the Appellate Division affirmed the Tax Court because it appropriately applied the objective standard of what "a prudent cable TV company ordinarily would intend" rather than what the actual cable company subjectively intended. 9 *N.J. Tax* at 369.

The actual history of the billboards suggests that they might have been intended to be affixed permanently. The billboards have been at their current sites for approximately thirty-five years. Post-installation history of property has been considered to support a finding that the ordinarily intention was one of permanence. In *Westinghouse Broadcasting Co., Inc. v. Taxation Div. Director,* 141 *N.J.Super.* 301, 358 *A.*2d 203 (App.Div.1976), the Appellate Division held that four 200–foot high, iron-constructed radio towers that were bolted to concrete bases did not qualify for an exemption under *N.J.S.A.* 54:4–1(a) because the towers were installed "with the intention that they should remain permanently in place so long as they can be used by petitioner or others for radio broadcasting." *Id.* at 308, 358 *A.*2d 203. The court bolstered its view by noting that the towers had stood there for over forty years. *Ibid.*

The Tax Court relied on those facts in holding that the ordinary intent was to have the billboards permanently affixed to the land. 13 *N.J. Tax* at 532–33. It also reasoned that the billboard owners had little reason to move the billboards to neighboring municipalities because building codes were very restrictive and the disassembled parts could not easily be reassembled. *Id.* at 533. The trial court, however, failed to consider the course of billboard industry practices. On the record in this case, the intent of the land owners as an aspect of those industry practices was clearly a relevant factor that was entitled to greater weight than accorded by the lower courts.

That course of billboard industry practices demonstrates that the ordinary intent for the billboards is not to have them permanently affixed to the land. Several pieces of evidence suggest that outdoor advertisers do not ordinarily intend their billboards to remain permanently in place. First, billboard owners typically do not own the land on which their displays are constructed. Second, billboard leases are generally short-term ones. Third, wooden billboards are regularly constructed without a concrete foundation. Fourth, billboards often relocate on short notice due to State land condemnations and landlords' decisions not to renew leases.

The experience of Gannett Outdoor, Co., the largest billboard company in New Jersey, reflects the short-term nature of billboard work. Gannett removed 600 billboards in 1992 and 1993 in New Jersey. Maxwell adds that fourteen signs have been removed from Galloway Township since the early 1980s. Similarly, in *Creative Displays, Inc. v. South Carolina Highway Dept.,* 272 *S.C.* 68, 248 *S.E.*2d 916, 919 (1978), for example, the South Carolina Supreme Court concluded that "it was standard in the signboard trade that one had to anticipate that from time to time signs would have to be moved. Obviously, a landowner cannot tie up valuable real estate for the meager rental received for permitting signs to be erected. This is evident from the lease here involved." It is notable that the leases are for only a two-year

period and Scola has the right to terminate Maxwell's lease in order to sell the property or to build a permanent building.

Finally, the regulation promulgated by the Division of Taxation, *N.J.A.C.* 18:12–10.1, provides a three-part test that suggests the billboards are not ordinarily intended to be permanently affixed to the land. The regulation interprets, according to "the custom and usage of the trade," the phrase "not ordinarily intended to be affixed permanently to real property" as "like personal property … not intended to be permanently affixed." The regulation provides three indicators of ordinary intent:

1. In the event of sale of the realty, the personal property would not ordinarily pass with title to the realty;

2. In the case of a business, the personal property ordinarily would be removed from the real property in the event of the relocation of the business;

3. Similar items of personal property are frequently resold separate from the real property.

[*Ibid.*]

The billboards clearly pass the regulation's three-part test. First, billboards remain the property of the billboard company and do not ordinarily pass with title to the realty on which they are erected. Second, billboard companies do not leave billboards when their leases end and they vacate a location; rather, they remove them and erect them at new sites. Third, billboards are frequently resold separately from the real property. Every year, *amicus* informs us, hundreds of billboards are sold in New Jersey from one company to another.

Accordingly, we determine on the record in this case that billboards are not ordinarily intended to be affixed permanently to the land. We conclude that billboards fall under the tax exemption of *N.J.S.A.* 54:4–1(a).

Of course, there are some billboards of steel and concrete that may not qualify for the tax exemption of *N.J.S.A.* 54:4–1(a). We focus here on traditional wooden billboards and do not determine whether steel and concrete billboards can be removed without being materially injured or were not ordinarily intended to be affixed permanently to the real estate.

## C.

■ The lower courts also determined that billboards were not taxable because they did not fall under the exception of *N.J.S.A.* 54:4–1(b). That subsection offers an alternative to the exception to real estate taxation provided by *N.J.S.A.* 54:4–1(a). Taxpayers must show that the property is "machinery, apparatus, or equipment used or held for use in business and is neither a structure nor machinery, apparatus, or equipment the primary purpose of which is to enable a structure to support, shelter, contain, enclose or house persons or property." The exception thus poses a three-part test that, in this case, would require: (1) the billboards must qualify as "machinery, apparatus, or equipment," (2) the billboards must be used or held for use in business, and (3) the billboards cannot be a "structure."

Subsection (b) represents the amendments made to *N.J.S.A.* 54:4–1 by the Business Retention Act of 1992. *L.* 1992, *c.* 24, § 3. The purpose of the amendment was to exclude more broadly personal property used or held for use in business from the local property tax. *See N.J.S.A.* 54:4–1.14.

The 1992 amendments broadened the reach of the subsection (b) "machinery, apparatus or equipment" exemption to its current form. The Legislature specified that:

> The bill amends subsection (b) of R.S. 54:4–1 to specify that items of machinery, apparatus or equipment used in the conduct of a business are defined as personal property regardless of the class or type of real property to which such items may be affixed. Such items are defined as locally taxable real property only if they constitute a structure, as defined in the bill, or are primarily used to enable a structure to support, shelter, contain, enclose, or house persons or property.
>
> [Committee Statement to *S.* 332 (following *N.J.S.A.* 54:4–1.13).]

The broader exclusion from local taxation was an essential element to the Legislature's goal of reaffirming its policy to exclude "machinery, apparatus and equipment used or held for use in business from local taxation." *Ibid.* In addition, the Legislature intended to reverse a line of Tax Court cases that had narrowly

construed the "machinery, apparatus, or equipment" exemption under the previously worded subsection (b).[2]

In *Emmis Broadcasting Corp. v. East Rutherford Borough*, 14 *N.J. Tax* 524 (1995), the Tax Court read the exclusion expansively in order to effectuate the Legislature's intent to grant a "broad exclusion from local property taxes [to] business personal property used or held for use in business." *Id.* at 533. It then concluded that "within the meaning of *N.J.S.A.* 54:4–1.15, [three radio towers] are machinery, apparatus, or equipment" while their "concrete bases are not." 14 *N.J. Tax* at 533–34.

The Tax Court acknowledged that the radio towers "would be taxable as real property but for the fact that they are machinery, apparatus, and equipment." *Id.* at 534. In other words, they would not qualify for the subsection (a) exception because they were ordinarily intended to be affixed permanently to the real property. *Id.* at 535–36. To reach the conclusion that radio towers were machinery, apparatus, or equipment, the court looked to the Division of Taxation's own regulations, which defined the term as

> any machine, device, mechanism, instrument, tool, tank or item of tangible personal property used or held for use in business [and to] also include[ ] machinery, apparatus or equipment directly used in the production [or] sale of … telecommunication services. . . .
>
> [*Id.* at 533, quoting *N.J.A.C.* 18:12–10.1.]

The court concluded that because the towers transmit the radio waves for the radio station, there is "no doubt that the antennas are covered by the definition of tax-exempt machinery, apparatus, and equipment found in *N.J.S.A.* 54:4–1(b)." *Ibid.*

---

[2] The Act specifically diverged from the results reached in *American Hydro Power Partners v. Clifton*, 11 *N.J. Tax* 12 (1990) (holding machinery used in hydroelectric power generation taxable as real property), *aff'd in part and remanded in part*, 12 *N.J. Tax* 264 (App.Div.1991); *Badische Corp. v. Town of Kearny*, 11 *N.J. Tax* 385 (1990) (holding machinery and equipment used in batch ester plant taxable as real property); and *Texas Eastern Transmission Corp. v. Div. of Taxation*, 11 *N.J. Tax* 198 (1990) (holding machinery and equipment used in natural gas compression taxable as real property).

The court also distinguished its holding from the result of the Tax Court in this case. It explained that billboards did not qualify as machinery, apparatus, or equipment because they were "structures" that supported property—the billboard face. The radio towers, in contrast, were not "structures" because they did not support anything: the tower was itself the apparatus transmitting the radio waves. *Id.* at 535.

Both *N.J.S.A.* 54:4–1.15 and *N.J.A.C.* 18:12–10.1 define "machinery, apparatus, or equipment" to mean "any machine, device, mechanism, instrument, tool, tank or item of tangible personal property used or held for use in business." Taxpayers argue that billboards in function and purpose are like the towers in *Emmis* that transmit radio waves and are items of personal property that happen to be used in outdoor advertising.

That argument, however, has little support in case law. In *Panta Astor, Inc. v. Taxation Div. Director,* 8 *N.J. Tax* 464 (1986), the Tax Court considered the meaning of "machinery, apparatus, or equipment" in the context of New Jersey's Sales and Use Tax Act, *N.J.S.A.* 54:32B–1 to –29. The court relied on *Webster's New Collegiate Dictionary* (1979), whose "definitions show that 'machinery' includes the working parts of a machine, 'equipment' includes the 'implements' used in an operation and 'apparatus' is considered a synonymous cross-reference to equipment." 8 *N.J. Tax* at 473.

In *Taylor v. Lower Township,* 13 *N.J. Tax* 371 (1993), and *Freehold Township v. Javin Partnership,* 15 *N.J. Tax* 88 (1995), the Tax Court held that floating docks were taxable as real property under *N.J.S.A.* 54:4–1 because they did not qualify under the tests of either subsection (a) or (b). The Tax Court held that floating docks failed under *N.J.S.A.* 54:4–1(a) because they were ordinarily intended to be permanently affixed to the land. In addition, the court held that they did not qualify as machinery, apparatus, or equipment because they did not fit in any of the accepted definitions. *Taylor, supra,* 13 *N.J. Tax* at 380.

The Tax Court in *Taylor, supra,* 13 *N.J. Tax* 371 (1993), accepted the *Panta Astor* constructions and supplemented them with definitions from *Webster's Third International Dictionary of English Language* (unabridged ed. 1986). The Tax Court explained:

Machinery is defined as follows:

1: Machines as a functioning unit: as ... b(1): the constituent parts of a machine or instrument: ... 2a: the means and appliances by which something is kept in action or a desired result is obtained....

Apparatus is defined as follows:

... 2a: a collection or set of materials, instruments, appliances, or machinery designed for a particular use ... b: any compound instrument or appliance designed for a specific mechanical or chemical action or operation:....

Equipment is defined as:

... 2a: the physical resources serving to equip a person or a thing ... as (1): the implements (as machinery or tools) used in an operation or activity....

[*Id.* at 379–80.]

In revisiting this issue in *Freehold, supra,* the Tax Court believed that the rule of *ejusdem generis* required a narrow construction of the scope of "machinery, apparatus, or equipment." Under that rule, "when general words follow specific words in a statutory enumeration, the general words are construed to embrace only the objects similar in nature to those objects enumerated by the preceding specific words." 15 *N.J. Tax* at 101 (citation omitted). Thus, "[w]hen the principle of *ejusdem generis* is applied here, it is clear that the very general words 'item of tangible personal property used or held for use in business' must be limited to property similar in nature to the preceding specific types of property, namely machines, devices, mechanisms, instruments, tools, and tanks." *Ibid.* Under this construction, billboards are not covered by the "machinery, apparatus or equipment" provision of subsection (b).

Taxpayers' argument that the Legislature intended, by enacting the Business Retention Act, that items like billboards would be tax exempt is equally without support. The Business Retention Act was enacted to "ensure New Jersey's continued competitiveness in

*manufacturing* industries." *General Motors Corp. v. City of Linden,* 13 *N.J. Tax* 324, 327 (App.Div.) (emphasis added), *certif. denied,* 134 *N.J.* 561, 636 *A.*2d 519 (1993). As the Act itself explains, the Legislature broadened the exemption for machinery, apparatus, or equipment in order to "create and maintain reasonable incentives for *manufacturing* interests to exist and thrive in New Jersey." *N.J.S.A.* 54:4–1.14 (emphasis added). Billboards are not a part of the manufacturing industry, and thus are not items the Legislature had in mind when passing the Business Retention Act. Accordingly, courts have only granted subsection (b) exemptions to help manufacturing interests. *Emmis* is the only exception to this trend. Taxpayers' reliance on *Emmis,* however, is of limited value because *N.J.A.C.* 18:12–10.1 specifically mentions how the classification of "machinery, apparatus, or equipment" applies to equipment "used in the production of . . . telecommunication services." Billboards clearly are not used in telecommunications services. Because outdoor advertising is neither a manufacturing nor telecommunications activity, we cannot infer that the Legislature intended the Business Retention Act to cover billboards.

■ Even if billboards passed the first prong of the subsection (b) test, they would not qualify for the exception because they fail the third part of the test: billboards clearly are structures. A structure is defined as "any assemblage of building or construction materials fixed in place for the primary purpose of supporting, sheltering, containing, enclosing or housing persons or property." *N.J.S.A.* 54:4–1.15.

The leases themselves refer to "[a]ll signs and sign structures" evidencing an understanding that the supports of the billboards are distinct from the sign structures that carry the advertising signs of the billboards.

The billboard and the sign face are separate pieces of property and the billboard serves to support the sign face. Billboards are therefore structures because their primary purpose is to support property, namely the advertising copy on the sign face. *Amicus,*

moreover, points out that "the sign face, that part which makes a billboard a billboard, is frequently taken back to the shop, shifted to another location and another face located at the original site."

## IV

We reverse the judgment of the Appellate Division.

*For affirmance*—Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—6.

*Opposed*—None.