294 N.J. Super. 381 (1996)
683 A.2d 582
ELLENHEATH CONDOMINIUM ASSOCIATION, INC., PLAINTIFF-RESPONDENT,
v.
NAYDA KOVAK PEARLMAN AND ALAN J. PEARLMAN, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 7, 1996.
Decided October 24, 1996.
*382 Before Judges PETRELLA, LANDAU and KIMMELMAN.
John F. Gelson argued the cause for appellants (McLaughlin Bennett Gelson Cramer, attorneys; Mr. Gelson, of counsel and on the brief, Denise A. DaPrile, on the brief).
R. Bruce Freeman argued the cause for respondent (Woehling & Freeman, attorneys; Mr. Freeman, on the brief).
The opinion of the court was delivered by KIMMELMAN, J.A.D.
Defendants appeal from a summary judgment entered against them in the amount of $17,794.41 representing costs incurred by plaintiff for the clean-up of soil contaminated by a leaky fuel oil underground storage tank (UST) and for the replacement of the *383 tank. The trial court later awarded counsel fees of $4111.58 to plaintiff.
Defendants own a condominium unit in the Ellenheath condominium complex located in Matawan, New Jersey. Plaintiff is the organization charged with the operation and management of the condominium complex. Resolution of this dispute depends upon whether the UST installed in front of defendants' condominium unit and used to service the heating needs of their unit is considered a component of their unit, and thereby defendants' responsibility for replacement and payment of clean-up costs, or whether the UST is a component of the common elements of the complex, and thereby the responsibility of plaintiff. Unfortunately, the definition of condominium "unit" or "common elements" in the master deed makes no mention of underground storage tanks for heating fuel.
It is undisputed that every unit in the Ellenheath condominium complex, there are fifty-four individually-owned units, was constructed with a separate UST buried in front of each unit for the purpose of storing the fuel oil for combustion in the oil-fired furnace in the basement of that particular unit. Each unit owner is responsible for the purchase of heating oil. This heating oil enters the furnace through a pipe running from the UST through each unit's basement wall.
The oil leaking from defendants' UST was discovered when an oil film appeared in the sump pump of an adjoining unit. The matter came to the attention of the State Department of Environmental Protection and Energy, which ordered a clean-up of the oil-contaminated surrounding soil.
At this point, a dispute arose between the parties as to whose responsibility it was to replace the UST and clean-up the contaminated soil. Defendants insisted the UST was a common element and, therefore, the responsibility of plaintiff to replace and clean-up. Defendants contended that they had an understanding with a former president of plaintiff that plaintiff would be responsible for the payment of costs arising from the oil spill. On the other hand, *384 plaintiff maintained that the UST was not a common element and, therefore, not its responsibility to replace the tank or to remediate the oil spill. When defendants refused to act, plaintiff engaged a firm to perform the tank replacement and contaminated soil clean-up. The Law Division ordered defendants to reimburse plaintiff for the resultant cost.
The master deed of the condominium complex in defining a condominium "unit" includes "pipes ... running through any interior wall ... for the furnishing of utility services...." It is not necessary for us to decide whether the basement wall through which the pipe passes is to be considered interior or exterior. The master deed defines "common elements" as comprising "all of the property and improvements and facilities ... other than the Units, as same are hereinafter defined...." Nevertheless, the phrase "common elements" as used in the master deed must yield to the statutory definition of "common elements" as set forth in N.J.S.A. 46:8B-3d(ii), which definition excludes from "[c]ommon elements," "any improvement ... specifically reserved or limited to a particular unit...." See N.J.S.A. 46:8B-7 (mandating the primacy of the statutory definition).
There is no doubt that the UST is a change or addition to the ground in front of the unit and, in that sense, it is an improvement. See Parker v. Wulstein, 48 N.J. Eq. 94, 96, 21 A. 623 (Ch. 1891), holding that "[t]he word `improvement' may be said to comprehend everything that tends to add to the value or convenience of a building ..."; but distinguished in R.C. Maxwell Co. v. Galloway Township, 145 N.J. 547, 555, 679 A.2d 141 (1996), holding that in the context of a real estate tax assessment an "`improvement' is construed as an addition to land that is obviously, unmistakably, and inherently permanent." The UST is intended to constitute an essential and permanent part of the heating facility of the unit because without its presence containing fuel oil, ordered and paid for by the individual unit owner, the furnace would not function. Each UST being specifically reserved to serve a particular unit is then an improvement which clearly is *385 excluded from the definition of "common elements." N.J.S.A. 46:8B-3d(ii). Logically as well as legally, the UST forms a part of the unit and is the responsibility of the unit owner.
Defendants' attempt to create a genuine issue of material fact sufficient to defeat the summary judgment must fail. The "discussion" with the former president of plaintiff whereby it was understood that plaintiff was responsible for payment was sketchy at best and was never confirmed by plaintiff or by the former president. The understanding urged by defendants was nothing more than an ad hoc interpretation of the master deed and plaintiff's by-laws. It is unlikely that the former president could commit plaintiff to a binding legal obligation through an informal conversation. See Konsuvo v. Netzke, 91 N.J. Super. 353, 374, 220 A.2d 424 (Ch.Div. 1966). Moreover, plaintiff's by-laws, art. 5, provide that: "All agreements, contracts, deeds, leases, checks and other instruments of the Association shall require execution by any two officers of the Association or by such other person or persons as may be designated by the Board of Trustees." Defendants offered no proof that the president was so designated to make private agreements. Obviously, this attempt by defendant does not rise to the level of creating a genuine issue as to a material fact which would "permit a rational factfinder to resolve the alleged disputed issue in favor of" defendants. Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 540, 666 A.2d 146 (1995).
We have not undertaken to address the State and Federal environmental laws with respect to the ultimate responsibility for the clean-up of underground contamination. That issue was not made part of this appeal. Our opinion is limited solely to the consideration and resolution of the primary dispute between an owner of a condominium unit and the condominium association, based upon a unique factual record, as to whether an underground storage tank, dedicated to a single unit and buried in the ground outside of that unit, is deemed part of the common elements absent specific mention in the condominium documents.
*386 With the addition of the foregoing comments, the summary judgment and the award of counsel fees entered by Judge Chambers are both affirmed substantially for the reasons expressed by Judge Chambers in her oral opinions.
The application of plaintiff for the award of counsel fees for services rendered on this appeal will not be considered. The application is premature. R. 2:11-4.