PER CURIAM.
Defendant appeals from a decision of the Tax Court valuing plaintiffs’ property for real property taxes for the years 1991 through 1994. Defendant contends that the judge (1) erred in certain factual findings; (2) should have assessed the property at its highest and best use; and (3) should not have held that certain radio towers were non-taxable.
After a thorough review of the record, we affirm substantially for the reasons stated by Judge Small in his comprehensive written opinion of March 21,1995.
I
The property consists of 22.58 acres and is located in a corner of the Sports Complex Zone within the Hackensack Meadowlands. The property is bordered principally by the New Jersey Turnpike and by land owned by the New Jersey Sports and Exposition Meadowlands Sports Complex. The bordering land contains Giant Stadium, the Meadowlands Arena and the Meadowlands Race Track. Situated on the property is a 4,080 square foot brick building containing various broadcasting equipment and three 500 foot AM radio broadcast towers.
During the years 1991 and 1992, the property was assessed at $6,843,000. For the tax years 1993 and 1994, the property was assessed at $22,509,800. Plaintiffs appealed the assessments to the Bergen County Board of Taxation. The assessments were not reduced.
Plaintiffs then filed complaints in the Tax Court. A trial was held. Judge Small found that there were three fundamental issues which he resolved as follows: (1) the concrete bases on which the radio towers sit are locally assessable as real property; however, the towers are not locally assessable; (2) six and one-third acres of the 22.58 acre parcel are wetlands; and (3) the total fair market value of the property on each of the four assessing dates was $6,027,300.
*33 As to the towers, the judge concluded that if it were not for the Business Retention Act (“Act”), see N.J.S.A. 54:4-1(b) and N.J.S.A. 54:4-1.12 to -1.16 enacted in 1992, he would have been compelled to follow two of our cases in which broadcast antenna towers were found to be subject to local real property taxation. See NYT Cable TV v. Borough of Audubon, 230 N.J.Super. 530, 553 A.2d 1368 (App.Div.), certif. denied, 117 N.J. 646, 569 A.2d 1344 (1989), and Westinghouse Broadcasting Co., Inc. v. Director, Div. of Taxation, 141 N.J.Super. 301, 358 A.2d 203 (App.Div.1976). Judge Small concluded, however, that under the Act, the towers are personal property used or held for use in business and therefore excluded from local real property taxes.
On the wetlands issue, the judge accepted the testimony of a wetland’s expert for plaintiffs. The testimony was based upon the expert’s field survey of the property.
As to the value of the real property, the legal experts of the parties were far apart. Plaintiffs maintained that the fair market value of the property was different in each of the tax years. Plaintiffs’ estimates of value over the four years ranged from $3,400,000 to $5,000,000. The defendant contended that the value was $18,815,000. The judge found that plaintiffs’ expert was “more credible” and that plaintiffs’ “conclusions, with some adjustments, are closer to the truth than are defendant’s conclusions of value.”
The judge found that the only comparable sale was a parcel in North Bergen, New Jersey. The judge made certain downward adjustments in the sales price of that parcel and concluded that a value of $240,800 per acre should be applied to plaintiffs’ property. The judge found that the wetlands portion of the property should be valued at the same rate as the remainder. The judge multiplied the number of acres by the per acre value of $240,800 to reach a total land value of $5,437,264. The parties stipulated a total value of $150,000 for the building on the premises and $440,000 for the concrete piers on which the towers were situated for a total of $590,000. By adding that total value to the value of *34 the land, the judge reached his fair market value figure of $6,027,264.
II
Real property should be assessed for tax purposes at its fiill and fair value, that is, the price which it would sell for at a fair and bona fide sale by private contract. N.J.S.A. 54:4-23. A fair sale is a transaction between a buyer willing but not obliged to buy and a seller willing but not obliged to sell. See Hackensack Water Co. v. Borough of Old Tappan, 77 N.J. 208, 213, 390 A.2d 122 (1978). In the application of that standard, “it is appropriate to consider the highest and best use of the property.” Ibid.
Defendant maintains that the property is uniquely suitable for development and should be valued accordingly. Defendant contends that the test for determining a property’s highest and best use, when that use is not presently in existence, is “the probability of obtaining necessary zoning changes.” Defendant argues that here no zoning changes were required because they were already in place and the property is “ready to go at its highest and best use.” Thus, defendant maintains, it was error to “classify” the property “as an unreasonably obtainable or speculative future use when it is presently zoned and has a present user for that use.”
Defendant also argues that the comparable property relied on by the judge in valuing the subject property is in a poor location with substantial wetlands and possibly contaminated. Defendant argues that its comparable sales are situated in the Hackensack Meadowlands Region and more appropriately reflect the market for the subject property.
The judge concluded that the value of the property for future development was too speculative. The judge said that plaintiffs’ expert testified that:
the highest and best use of the subject property as improved is its current use as a radio station. He testified that the highest and best use as vacant is for future development. He further testified that because of the soft market in the area the time at which the property could be developed was uncertain.
*35 The judge pointed out that, although defendant’s expert testified that the highest and best use was development, he failed to indicate when that development would take place. The judge also said:
On cross-examination it was pointed out that in other eases in which this expert [defendant’s expert] testified with regard to valuing properties which could be developed in the future he took a discount when using comparables which were currently developable. In this case, no such discount was taken.
The judge reviewed the testimony of the four witnesses presented by the defendant as to future development. For reasons set forth in his opinion, the judge rejected the estimate of these witnesses to the extent the witnesses concluded that the property had a substantially enhanced present value based on a potential for future development. The judge said:
[the] non-valuation testimony of the defendant’s witnesses with regard to the potential development of the subject parcel, although interesting and imaginative, simply did not help this court. Apparently, those individual’s conclusions played little or no role in the defendant’s expert appraisal. The testimony of those witnesses had no impact on this court’s ultimate conclusion of value.
The witnesses were not valuation experts, the judge noted, and therefore, “they lacked the critical knowledge as to the economic feasibility of their grandiose plans for development of the subject property.”
Assessments by a municipality and a county tax board have a presumption of validity. Ford Motor Co. v. Edison, 127 N.J. 290, 310, 604 A.2d 580 (1992). However, the Tax Court, because of its special expertise in these matters, has a duty to apply its judgment to the expert’s valuation data in order to arrive at a true value. Id. at 311, 604 A.2d 580. A Tax Court Judge can reject in whole or in part any testimony offered by an expert. Glenpointe Assoc. v. Tp. of Teaneck. 241 N.J.Super. 37, 46-47, 574 A.2d 459 (App.Div.), certif. denied, 122 N.J. 391, 585 A.2d 392 (1990). The findings of the Tax Court Judge will not be disturbed on appeal “unless they are plainly arbitrary or there is a lack of substantial evidence to support them.” Id. at 46, 574 A.2d 459.
Applying these principles here, Judge Small’s findings are sound and supported by the record. No definitive agreements for *36 future development were in place. Some testimony even suggested that the land was too small for the defendant’s suggested use as an amusement park. A highway commercial use was also speculative. The property was specifically zoned “Sports Complex” and was the only privately owned property so zoned. The unique form of zoning, as well as the lack of regulatory approvals on the subject property support the judge’s conclusion that the property’s future uses are speculative. His findings are upheld.
As to comparable sales, the judge found that the most comparable sale relied on by plaintiffs’ expert was a 14.25 acre parcel in North Bergen for $4,046,000, or $283,284 per acre. The judge applied a fifteen percent negative adjustment based on the subject property’s physical characteristics and uncertain zoning. He thereby reached a value rounded off as $240,800. The judge reviewed the defendant’s expert’s comparable sales and rejected them for various reasons. The judge’s analysis is persuasive and is upheld.
As to the wetlands issue, the judge found plaintiffs’ expert to be a credible witness. The expert had made a field survey. The judge concluded that there was no better way of determining wetlands than an actual field survey. The judge pointed out that no governmental agency had yet determined the wetlands on plaintiffs’ property. Consequently, “the market must reflect what they are likely to be” and, “at this stage[,] the actual mapping of [plaintiffs’ expert] ... is a more accurate predictor of the ultimate conclusions, maps, and approvals, than are the preliminary crude maps offered by defendant.”
The judge found that the wetlands would contribute to the development of the property and therefore should be valued in the same manner as the uplands. The judge said:
the precise designation and qualification of wetlands has no effect on my ultimate conclusion of value. Only if the amount and location of the wetlands were significantly different from plaintiffs’ expert’s conclusions would they significantly reduce the value which I have found.
The judge’s findings as to the wetlands are well supported in the evidence. His determination is upheld.
*37 III
The defendant argues that the judge should not have “dissected” the towers from their foundations. This argument may have had merit prior to the adoption of the Business Retention Act. See NYT Cable TV v. Borough of Audubon, supra, and Westinghouse Broadcasting, Inc. v. Director, Div. of Taxation, supra. The Act, however, clearly exempts property such as the radio towers here from local taxation.
The purpose of the Act was stated in the Act as follows:
The Legislature, therefore, declares that it is the policy of the State, through this act, to refine the definitions of real property and personal property in order to reaffirm the broad, exclusion from local property taxes of business personal property used or held for use in business.
[N.J.S.A. 54:4-1.14 (emphasis added).]
The Act provides:
... Real property taxable under this chapter means all land and improvements thereon and includes personal property affixed to the real property or an appurtenance thereto, unless:
(b) The personal property so affixed is machinery, apparatus, or equipment used or held for use in business and is neither a structure nor machinery, apparatus or equipment the primary purpose of which is to enable a structure to support, shelter, contain, enclose or house persons or property.
[N.J.S.A. 54:4-l(b)J
Structure is defined as:
‘Structure’ means any assemblage of building or construction materials fixed in place for the primary purpose of supporting, sheltering, containing, enclosing or housing persons or property.
[N.J.S.A. 54:4-1.15.]
The Act defines “[m]achinery, apparatus or equipment” as “... any machine, device, mechanism, instrument, tool, tank or item of tangible personal property used or held for use in business.” N.J.S.A. 54:4-1.15.
The Act defines “[u]sed or held for use in business” as “any item of machinery, apparatus or equipment used or held for use in a business transaction, activity, or occupation conducted for profit in New Jersey.” Ibid.
*38 The Senate Budget and Appropriations Committee in its statement on the Act points out that the bill “amends the description of locally taxable property to reaffirm the Legislature’s regularly stated position of excluding machinery, apparatus and equipment used or held for use in business from local taxation.” The Committee said that the Act was intended “[t]o reject and reverse the classification of property and narrowing of business property exclusions accomplished by a series of recent New Jersey Tax Court decisions____”
The Committee stated further that the amendment has specified:
that items of machinery, apparatus or equipment used in the conduct of a business are defined as personal property regardless of the class or type of real properly to which such items may be affixed. Such items are defined as locally taxable real property only if they constitute a structure, as defined in the bill, or are primarily used to enable a structure to support, shelter, contain, enclose, or house persons or property.
Judge Small properly applied the provisions of the Act. He concluded:
As noted above, the towers themselves are not used for the purpose of supporting an antenna, as was the tower in NYT Cable TV v. Audubon, supra. The towers are, in fact, the antenna. Therefore, I find that within the meaning of N.J.S.A. 54:4-1.15, the towers are machinery, apparatus, or equipment.
The dictionary definition of machinery, apparatus, and equipment discussed by this court in Taylor v. Lower Township, 13 N.J.Tax 371, 379-80 (Tax 1993) and the Director of the Division of Taxation’s regulation which defines the term ‘machinery apparatus or equipment’ to mean
any machine, device or mechanism, instrument, tool or other item of property directly used ... in the sale of services ... in the regular course of business [and to] ... also include machinery apparatus or equipment directly used in the production for sale of ... telecommunication services ... N.J.A.C. 18:12-10.1
leave no doubt that the antennas are covered by the definition of tax-exempt machinery, apparatus, and equipment found in N.J.S.A. 54:4-1(b).
I further find that because they were used to broadcast the radio signal of radio station WEVD they “were used or held for use in business.’ In addition, since they do not ‘support, shelter, contain, enclose or house, persons or property,’ and they are in fact, machinery, apparatus, or equipment, they constitute neither a ‘structure’ within the meaning of N.J.S.A. 54:4-1.15, nor ‘machinery, apparatus or equipment the primary purpose of which is to enable a structure to support, shelter, contain, enclose or house persons or property’ within the meaning of N.J.S.A. 54:4-1(b).
Judge Small also said:
*39 Radio broadcasting is a business, the antennas are an essential part of that business, and they are used in the regular course of the business. The antennas are scientifically constructed and used to broadcast radio waves at a specific frequency to communicate WEVD’s radio broadcast and commercial messages to its listening audience. The docks and piers are simpler, more passive structures. Although they may have contained or supported wiring, piping, and other utilities they are functionally distinguishable from the wave transmitting antennas.
In R.C. Maxwell Co. v. Galloway Township, 13 N.J.Tax 519, 529 (Tax 1993), aff'd, 15 N.J.Tax 187 (App.Div.), certif. granted, 142 N.J. 456, 663 A.2d 1363 (1995), the Tax Court found that billboards were “structures” and therefore not exempt from local property tax. Judge Small distinguished the Maxwell case by stating that “[t]he primary purpose of the billboard was to support property (advertising copy). The antennas in this case support nothing — they transmit waves.”
Judge Small’s analysis and findings are sensible and supported by the record. Under the Business Retention Act, the towers are personal property used or held for use in business and are exempt from local property taxes.
IV
The Tax Court in a recent unreported decision, General Motors Corp. v. City of Linden, decided January 4, 1996 by Judge Dougherty, held that the Business Retention Act broadened the definition of personalty and is therefore facially unconstitutional. The judge reasoned, in part, that the provision which exempts machinery, apparatus and equipment used or held for use in business violates the Uniformity Clause of the New Jersey Constitution. See N.J. Const. Art. 8 § 1, ¶ 1(a).
This issue was not raised below nor has it been briefed before us. We therefore decline to decide it. See In re Certification of Need Issued to Bloomingdale Conval. Ctr., 233 N.J.Super. 46, 48 n. 1, 558 A.2d 19 (App.Div.1989) (issue not briefed before appellate court was not decided); Ferraro v. Demetrakis, 167 N.J.Super. 429, 431-432, 400 A.2d 1227 (App.Div.), certif. denied, 81 N.J. 290, 405 A.2d 834 (1979) (appellate court refused to entertain plaintiffs’ *40 “constitutional theory” because it was neither pleaded nor argued below).
The decision of the Tax Court is affirmed.