AXELRAD, J.T.C.
This local property tax matter involves the added assessment of utility and other site improvements installed in the right of way of a single family residential development owned by U.S. Home Corporation (“developer”). The 101 lot development is known as Centennial Pointe and is located at Block 110, Lot 178, in Howell Township, Monmouth County.
The Howell Township Planning Board memorialized the Final Major Subdivision approval for Centennial Pointe on November 2, 1995. The developer took title to the parcel on July 2, 1996. At the time of its acquisition the property was not improved. The municipal approval required dedication of streets to the municipality and the developer to install curbs, sidewalks, paving, and utilities within the right of way. Most of these site improvements were installed prior to the filing of the Final Subdivision Plat for Section 1 with the Monmouth County Clerk on December 17, 1996. The filed map created individual lots and dedicated the right of way containing these improvements to the municipality. The rest of the site improvements were installed prior to January 1, 1997. As the developer did not erect homes on a speculative basis, as of that date no construction had begun on any homes in Centennial Pointe. Starting in February 1997, the developer began marketing the individual lots and entered into contracts for their purchase and the construction of new homes on these lots. Each of these homes was to be serviced by the site improvements that the developer had constructed within the right of way dedicated to the municipality. The Final Subdivision Plat for Section 2, representing the remaining lots in the subdivision, was filed with the clerk on October 22,1997.
Centennial Pointe had an assessed value in 1991 of $556,000, which w-’as increased in 1994 to $2,020,000 to reflect the subdivision approvals. The assessment was further increased for the 1997 tax year to $8,030,000, as a result of some ground work activity on the *152 site in September 1996. All assessments were for land only; there were no assessments for improvements in any year. On September 15, 1997, the assessor placed a single line item added assessment on the subject property for the improvements located in the right of way in front of the individual lots, consisting of curbs, sidewalks, base coat of asphalt, underground wiring, sewer, water, natural gas, cable TV, and drainage completed after October 1,1996, of $1,499,000 (twelve months).
The Monmouth County Board of Taxation reviewed the Added Assessment List at its meeting on October 8, 1997 and removed the subject line items, advising the assessor of this correction by letter dated October 10, 1997. The municipality timely filed a complaint against the county board with the Tax Court. The court subsequently granted the developer’s motion to intervene, as the developer is the proper defendant, not the county board.
For the 1998 tax year, consistent with prior tax years, the assessor did not set any assessment for improvements. He incorporated the $1,449,000 added assessment for the site improvements that was levied in October 1997 into the land value of the forty-four subdivided lots.
The developer filed a summary judgment motion to dismiss the municipality’s complaint with prejudice on the grounds that these improvements to land are not structures erected and completed and thus are not subject to levy by an added assessment under N.J.S.A. 54:4-63.2 or -.3, and an added assessment cannot be levied for improvements within a right of way dedicated for public use. The municipality asserts that the matter is not ripe for summary judgment and requires submission for trial. The Deputy Attorney General representing the county board took no position regarding the motion on the basis that the parties affected by the added assessments would fully and adequately present the issues.
Summary judgment motions are governed by R. 4:46-2 under the standards articulated by the New Jersey Supreme Court in Brill v. Guardian Life Insurance Co. of America, 142 N.J. 520, 545, 666 A.2d 146 (1995). “The judge’s function is not ... to *153 weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.” Id. at 540, 666 A. 2d 146. According to the Court,
[W]hen deciding a motion for summary judgment under Rule 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party. This assessment of the evidence is to be conducted in the same manner as that required under Ride 4:37-2(b).
[Id. at 523, 666 A.2d 146].
The express import of the Brill decision was to “encourage trial courts not to refrain from granting summary judgment when the proper circumstances present themselves.” Id. at 541, 666 A.2d 146.
The developer’s counsel submitted an uncontroverted statement of facts supported by a certification of its corporate officer and specific references to the deposition testimony of the assessor. The municipal attorney did not provide any opposing certifications. The municipality concedes that the factual contentions set forth by the developer are “essentially correct” with four additional references to the assessor’s deposition testimony. These statements amplify the facts cited by the developer, but do not dispute them. This evidence, when viewed in the light most favorable to the municipality with all legitimate inferences therefrom, does not present a sufficient disagreement to require submission of this matter for trial. As the court can make a determination as to whether the site improvements were appropriately made the subject of an added assessment as a matter of law based upon the undisputed evidence before it, the matter is ripe for summary judgment.
N.J.S.A. 54:4-1 defines the scope of the property tax as follows:
All property real and personal within the jurisdiction of this State not expressly exempt from taxation or expressly excluded from the operation of this chapter shall be subject to taxation annually under this chapter ... Ileal property taxable under this chapter means all land and improvements thereon and includes personal property affixed to the real property or an appurtenance thereto...
*154 Generally, the tax laws provide that the tax assessor must assess the property as of October 1 of the pretax year, by January 10 of the tax year. Such assessment constitutes the basis for the taxes imposed upon a taxpayer’s property for the relevant tax year. N.J.S.A. 54:4-23, -35.
The theory behind the added assessment statutes, as provided in N.J.S.A. 54:4-63.2 and -.3, is to permit the taxation of real property which becomes taxable during the year following' assessment date of October 1, in order to avoid having properties escape taxation until the next assessment date arrives ... [I]n order for new structures to be subject to the-added assessment law, the improvement must be substantially ready for the use for which it was intended. N.J.S.A. 54:4-63.1.
[Snyder v. South Plainfield Bor., 1 N.J.Tax 3, 7 (Tax 1980) (emphasis added) (citations omitted)].
By providing a procedure whereby new construction can be.included and taxed from the appropriate date when added to the land, this Act remedies an inequity to the municipality and “aid[s] in accomplishing a proper and equitable distribution of the tax burden.” In re New York State Realty & Terminal Co., 21 N.J. 90, 97, 121 A.2d 21 (1956).
N.J.S.A. 54:4-63.2 provides, in relevant part:
When any parcel of real property contains any building- or other structure which has been erected, added to or improved after October 1 in any year and completed before January 1 following, the assessor shall, after examination and inquiry, determine the taxable value of such parcel of real property as of the first day of the month following completion or sale of said property and if such parcel of real estate was not assessed as of October 1 preceding or if such value so determined exceeds the assessment made as of. October 1 preceding, the assessor, shall enter the amount of such assessment or such excess, as an assessment or an added assessment against such parcel of real property, for the subsequent tax year.
[Emphasis added.]
The language of N.J.S.A. 54:4-63.3 is identical t,o the above statute, except as to the dates of completion, which are “between January 1 and October 1 following.” Although the municipality’s complaint is inconsistent as it alleges that the added assessment was made pursuant to N.J.S.A. 54:4-63.2 and seeks relief reinstating the added assessment under N.J.S.A. 54:4-63.5, it is undisputed that the site improvements were deemed completed by the assessor by January 1, 1997, so the former statute would control. As the pleadings fairly apprise the adverse party of the claims and issues to be raised at trial, with all reasonable inferences and *155 implications considered most strongly in favor of the pleader, they are not deficient under It 4:5-2. Spring Motors Distributors, Inc. v. Ford Motor Co., 191 N.J.Super. 22, 29-30, 465 A.2d 530 (App.Div.1983), rev’d on other grounds, 98 N.J. 555, 489 A.2d 660 (1985).
The municipality acknowledges that the real property in question does not contain any building or existing structure which has been added to or improved. The novel issue presented is whether or not site improvements such as utilities, including water, sanitary and storm sewers, electric and gas; curbs, sidewalks, and a base coat of asphalt paving on the streets; and drainage located in the right of way in front of the individual lots constitute a “structure” which has been “erected” and “completed” during the requisite time period under the added assessment statutes.
It is important to note that the Legislature, when it enacted N.J.S.A. 54:4-63.1 to -63.11, did not use the term “improvement” in the added assessment statute as it did in N.J.S.A. 54:4-1. There is a clear distinction between the terms “improvement” and “structure.” “Improvement” refers to the general nature of change to a property, whereas “structure,” while it may be an improvement, carnes a more specific meaning, whether as defined by statute or common usage. The mere fact that the subject utility lines and roadway may improve and add value to the land is irrelevant as to whether an added assessment should be imposed. That increase in value can be reflected in the land assessment of the subdivided lots for the 1998 year, as was done by the assessor. Harrison Realty Corp. v. Town of Harrison, 16 N.J.Tax 375, 385 (Tax), aff’d, 17 N.J.Tax 174 (App.Div.1997), certif. denied, 153 N.J. 213, 708 A.2d 64 (1998).
The Legislature did not define the term “structure” in the added assessment statutes. “Structure” is defined, however, in another section of the taxing statute, the Business Retention Act, L. 1992, c. 23, § 3, amending N.J.S.A. 54:4-1, and both counsel have referred to this definition for guidance. “ ‘Structure’ ” means any assemblage of building or construction materials fixed in place for the primary purpose of suppoiiing, sheltering, containing, *156 enclosing or housing 2iersons or property. N.J.S.A. 54:4-1.15 (emphasis added) See also, N.J.A.C. 18:12-10.1. The municipality does not contend that the site improvements shelter, contain, or enclose persons or property. In depositions, the assessor admitted that, in and of itself, the sewer and water lines could not support persons and property. The municipality’s position is that these improvements, as well as the roads and curbs, “support” both persons and property in the abstract sense, in that they are components to making a property usable in a commercial manner. For example, the temporary roadways enable prospective home purchasers and the developer’s construction crews to gain access to the lots, and the utility lines will service the houses after they are constructed. The municipality also submits that the roads provide structural support for the vehicles.
As the Legislature did not define the term “support” in these statutes, the developer urges the court to apply the plain meaning and general usage of this word in its physical sense, rather than search for a metaphysical interpretation unsupported by any statutory language or case law. The principal definitions of “support” are: “1. to carry the weight of, especially from below [and] 2. to maintain in position so as to keep from falling, sinking, or slipping.” Webster’s II New College Dictionary, 1108 (1995). According to the developer, the primary purpose of the utility improvements, as acknowledged by the municipality, is not to provide support by holding something in place, and, even though pedestrians and vehicles travel over the roadway, its primary purpose is not to carry the weight of these objects but to provide access to the individual lots and subsequently constructed houses. As such, the developer asserts that the subject site improvements should not be considered a structure under the added assessment statutes.
N.J.S.A. 1:1-1 provides:
In the construction of the laws and statutes of this state, both civil and criminal, words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language. Technical words and *157 phrases, and words and phrases having a special or accepted meaning in the law, shall be construed in accordance with such technical or special and accepted meaning.
“It is a well established principle of statutory construction that a court should follow the clear import of statutory language.” International Flavors & Fragrances, Inc. v. Director, Div. of Taxation, 102 N.J. 210, 214, 507 A.2d 700 (1986), citing, Fedders Fin. Corp. v. Director, Div. of Taxation, 96 N.J. 376, 385, 476 A.2d 741 (1984). Such language should be read according to its ordinary or general meaning, so long as that reading comports with the statute’s legislative intent. Merin v. Maglaki, 126 N.J. 430, 434-35, 599 A.2d 1256 (1992).
“In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen.” Gould v. Gould, 245 U.S. 151, 153 38 S.Ct. 53, 62 L.Ed. 211 (1917) (citations omitted). See also, Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 526-28, 197 A.2d 673 (1964). “If the statute ‘is clear and unambiguous on its face and admits of only one interpretation, [courts should] delve no deeper than the act’s literal terms to divine the Legislature’s intent.’ ” Koch v. Director, Division of Taxation, 157 N.J. 1, 7, 722 A.2d 918 (1999) (citation omitted).
While the municipality suggests that there is more than one interpretation of the word “support,” it has provided no case law or legislative history to sustain its position that this term should be interpreted expansively rather than literally. The sole justification offered by The municipality appears to be the policy consideration of taxes being the lifeblood of government to which all taxpayers should contribute and the fear that these site improvements will escape taxation in the interim if they are not classified as structures. The municipality’s reliance upon Texas Eastern Transmission Corp. v. Department of the Treasury, Div. of Taxation, 11 N.J. Tax 198, 210 (Tax 1990), for its position that the subject site improvements constitute special purpose property, *158 to which a broader definition of structure should be applied so as to render it taxable, is misplaced. The Legislature’s subsequent enactment of the Business Retention Act, L. 1992, c. 23, § 3, amending N.J.S.A. 54:4-1, clearly indicates that the Legislature did not agree with the Tax Court’s expansive interpretation of structures for special purpose properties under N.J.A.C. 18:12-10.1. See Committee Statement to S.332: R.C. Maxwell Co. v. Galloway Tp., 145 N.J. 547, 562-3, 679 A.2d 141 (1996).
Although the municipality’s arguments are novel, they are not sufficient to convince the court to define the words “structure” or “support,” both of which are technical terms, in a way other than them generally accepted usage. N.J.S.A. 1:1-1. There is no indication in N.J.S.A. 54:4-1.15 that the Legislature contemplated the word “support” in an abstract sense rather than being used according to its ordinary meaning. Furthermore, the term “supporting,” as used in the statute, must be read in the context of the succeeding words “sheltering, containing, enclosing and housing” which are used in the statute in them physical sense. In addition, the doctrine of ejusdem generis requires a narrow construction of the scope of “building or other structure” under N.J.S.A. 54:4-63.2 and -3. The term “structure” must be¡ limited to property similar in nature to a “building.” Harrison Realty Corp. v. Town of Harrison, supra, 16 N.J.Tax at 385; Sutherland, Statutory Construction § 47.17.(5th ed.1992).
Moreover, the Legislature’s deliberate choice of the term “structure” rather than the term “improvement” in N.J.S.A. 54:4-63.2 and -3 undermines the municipality’s broad policy argument and indicates an intent not to tax all improvements for added assessment purposes. For example, when the added assessment statutes were enacted, the law authorizing a special assessment for local improvements, N.J.S.A. 40:56-1, was already in existence. In that statute the Legislature chose to define items similar to those assessed for added assessment purposes herein, such as paving and curbing, sewerage and drainage systems, water and other utility mains, and lines under a street, as “local improvements,” not as “structures.” Had the Legislature intended the *159 added assessment statutes to encompass items such as these, it could have easily utilized the word “improvement” rather than “structure” in these latter statutes. In addition, the fact that the amount of the local assessment is based on the benefits conferred upon the real estate under N.J.S.A. 40:56-26, suggests that the subject site improvements are not assessable in themselves, but only to the extent they contribute to the value of the land. In fact, in his deposition the assessor admitted that the roadway is not a taxable line item.
The developer’s interpretation is consistent with the case law interpreting N.J.S.A 54:4-1 and with N.J.A.C. 18:12-10.1. Although the Business Retention Act was enacted substantially after the added assessment statutes and in an entirely different context, the Act represents consideration by the Legislature of the term “structure.” As such, although the definition of “structure” in the Business Retention Act is not dispositive of its meaning within the added assessment statutes, the court agrees that it provides some guidance in interpreting the statutes herein. In American Hydro Power v. Clifton 12 N.J.Tax 264, 272 (App.Div.1991), the Appellate Division implicitly rejected an abstract interpretation of the word “structure” and embraced its ordinarily accepted definition. The court held that a dam -was not a “structure” for purposes of tax assessment, even under a broader definition applied to special purpose properties in Texas Eastern Transmission Corp. v. Department of the Treasury, Div. of Taxation, supra, 11 N.J.Tax at 210, because it was neither “an assemblage of building or construction materials” nor did it have “the primary purpose of supporting, sheltering, containing or enclosing persons or property.” Inherent in this conclusion is a recognition that the dam’s primary purpose is the creation of hydroelectric power to produce electricity, which provides a service to, but does not physically “hold up,” persons or property.
In Emmis Broadcasting v. East Rutherford Bor., 14 N.J.Tax 524 (Tax 1995), aff’d, 16 N.J.Tax 29 (App.Div.), certif. denied, 147 N.J. 263, 686 A.2d 764 (1996), Judge Small analyzed the term “support” in its physical sense and held that three radio broadcast *160 towers were exempt from taxation under the Business Retention Act. He concluded that the radio towers were not structures within N.J.S.A. 54:4-1.15, because they did not support anything; the antenna towers were themselves the apparatus transmitting the radio waves. Id. at 535. Neither were the towers “ ‘machinery, apparatus or equipment the primary purpose of which is to enable a structure to support, shelter, contain, enclose or house persons or property within the meaning of N.J.S.A 54:4-l(b).” Id. at 533. The court found, however, that the “concrete bases on which the steel towers sit” are taxable because they “are either improvements or ‘structures’ because they are ‘fixed in place’ and ‘support’ the steel towers.” Id. at 534 (emphasis added). In adopting this interpretation, the Tax Covet implicitly rejected the type of broad-brush definition urged by the municipality herein, since, in a metaphysical sense, the towers “support” both persons and property, because without them the radio station could not exist. Judge Small’s interpretation and language was quoted with approval by the Appellate Division at 16 N.J.Tax 29, 38 (App.Div.1996).
In R.C. Maxwell Co. v. Galloway Tp., supra, 145 N.J. 547, 679 A.2d 141, the Supreme Court reversed the lower courts and held that, under N .J.S.A. 54:4-l(a), wooden billboards are not taxable as real property under the Business Retention Act, because they can be removed without material injury and are not intended to be permanently affixed to land. The Court,however, held that billboards did not pass the first prong of the subsection (b) test because they are not “machinery, apparatus or equipment” and, even if they did, they would not qualify for exception because “billboards clearly are structures.” R.C. Maxwell Co. v. Galloway Tp., supra, 145 N.J. at 566, 679 A.2d 141. The Court adopted an interpretation of the word “structure” under N.J.S.A. 54:4-1.15 in its common usage physical sense, consistent with Judge Small as interpretation in Emmis Broadcasting Corp. v. East Rutherford Bor., supra, 14 N.J.Tax at 534-35.
The billboard and the sign face are separate pieces of property and the billboard serves to support the sign face. Billboards are therefore structures [within the *161 meaning of N.J.S.A. 54:4-1.15] because their primary purpose is to support property, namely the advertising copy of the sign face.
[R.C. Maxwell Co. v. Galloway, Tp., supra, 145 N.J. at 566, 679 A.2d 1411.
N.J.S.A. 54:4-63.2 and -.3 further provide that a structure has to be “erected, added to or improved” in order for it to be placed on the added assessment list.[1] The municipality submits that the word “erect” is synonymous with “construct,” citing to Black’s Law Dictionary 542 (6th ed.1990). According to the municipality, the typieal sign “Road Construction” used whenever a road is being built or repaired, is further evidence that the site improvements are a “structure which is erected” under the added assessment statutes. B’ollowing the analysis above in interpreting what was meant by the word “support,” this court must look at the generally accepted plain meaning and usage of the word “erect.” The verb “erect,” according to the Webster’s II New College Dictionary 381 (1995), means “1. To construct by assembling materials and parts [erect a building ], 2. To raise to an upright or rigid position. 3. To fix in an upright position. 3. to fix in an upright position. 4. To assemble or set up: ESTABLISH.”
The municipality’s argument is inconsistent with the policy and scope of the added assessment statutes as well as with principles of statutory construction. If the Legislature had intended for all improvements that were put in place after the assessing date to give rise to an added assessment, it could have easily done so by the use of the broader terms “improvement” and “construct” rather than the more narrow terms “structure” and “erect.” Furthermore, the developer persuasively argues that the Legislature’s choice of the term “erected” rather than “constructed” was intended to give some meaning to the word “structure” used in the same sentence, although this case clearly does not turn upon the choice of verb attached to the subject improvement. Buildings, bridges, and decks which are routinely regarded as being “erected,” are commonly thought of as structures, while roads, side *162 walks, and utilities which are routinely regarded as being “laid or installed,” are not structures.
The assessor himself is inconsistent in his treatment of the subject site improvements. He acknowledges that, if the subject improvements had been installed prior to October 1, 1996, he would have included them as part of the land valuation for 1997 to the extent that they benefited the property and would not have separately assessed any of them as an improvement. As previously stated, the assessor admits that a roadway is not even a taxable line item. Furthermore, although he regarded these improvements as a structure for added assessment purposes as of January 1; 1997, nine months later he classified the same items as land and incorporated the amount of the added assessment into the land value of the forty-four subdivided' lots for the 1998 tax year, with no assessment for improvements. In addition, the assessor recognized that there is nothing in the Real Property Appraisal Manual for New Jersey Assessors (Vols. I. & II) (commonly known as the “Assessor’s Manual”) or the Handbook for New Jersey Assessors, both issued by the Local Property and Public Utility Branch, New Jersey Division of Taxation, Department of the Treasury, and which he acknowledges are authoritative documents, that provide the basis for levying such an assessment as he did here. Furthermore, the assessor, never before attempted an added assessment for such improvements to land and was not aware of it being done anywhere in New Jersey despite the fact that the situation existed thousands of times.
The Appellate Division held as follows in Tewksbury Tp. v. Jersey Central Power & Light Co., 159 N.J.Super. 44, 386 A.2d 1348 (App.Div.1978), aff’d, 79 N.J. 398, 400 A.2d 60 (1979):
We deem it vitally significant that in past years local assessors throughout the State, with rare exceptions that need not be detailed, excluded public utility easements from their real estate assessment lists____This long-standing administrative practice, without change by the Legislature, is indicative of the legislative taxing scheme and intent, and is entitled to great weight in construing the taxing statutes involved.
If the Legislature wanted to assess and tax easements granted to public adults, it would have been a very simple matter for it to have so provided. The Legislature’s failure to do so, with full knowledge of how the local taxing districts *163 were dealing with the subject for many years, is supportive of the view expressed herein [ that these easements are not “real estate” subject to assessments levied by the township but, rather are taxable by the State under the Gross Receipts and Franchise Act],
[Id. at 50-51, 386 A.2d 1348 (emphasis added) (citations omitted).]
Although this long-standing practice by assessors is not conclusive as to the legality of such added assessment, it provides some indication that the assessors themselves, including The municipality’s assessor, have not considered this procedure to be an appropriate way to assess the curbs, sidewalks, paving, and utilities installed in the right of way of a residential development, and is entitled to great weight in construing the added assessment statutes.
Under the principles of statutory construction and the plain language doctrine, and consistent with the case law interpreting N.J.S.A. 54:4-1.15, the court finds that the subject site improvements do not “support persons or property” and, therefore, are not structures within the meaning of the added assessment statutes. In addition, although these items may have been installed or laid, they were not “erected” within the generally accepted meaning of that word. As such, there is no statutory basis for the assessor to place an added assessment on these site improvements.
Pursuant to N.J.S.A. 54:4-63.2, an added assessment may be levied on property if a building or other structure which is erected after October 1 is completed, before the following January 1st. In this regard, even if the improvements were structures that were erected on the property, the assessor may not impose added assessments until the improvements are “completed.”
N.J.S.A. 54:4-63.1 defines a structure as “completed” when it is “substantially ready for the use for which it was intended.” This does not mean that the structure must actually be in use, rather, it is taxable when it is ready for use. In reliance on Texas Eastern Transmission Corp. v. East Amwell Tp., 82 N.J.Super. 593, 198 A.2d 786 (App.Div.1964), the municipality submits that the site improvements in question have met the statutory defini *164 tion of “completed” because they were physically present in the municipality, the roadway was available for access, and the utility improvements were ready to be hooked up by January. 1,1997. In Texas Eastern, the Appellate Division held that a seven mile segment of a gas transmission pipeline which had been laid, backfilled, and upon which hydrostatic testing had been done, was “substantially” ready for use and was subject to an added assessment, even though it was part of a forty-one mile section between pumping stations that was not ready for use as of the requisite date. The court concluded that since all that was left to do was the removal of water and the cleaning and drying of the small segment, and it was more convenient for the pipeline company to conduct these finishing steps all at once for the entire forty-one mile section, the subject segment was itself substantially ready for incorporation into the pipeline as an entirety. Since the segment’s presence in the taxing district constituted “presumptive enjoyment of the protective and other benefits of local government,” there was no justification to delay its taxation in the interim. Id. at 598, 198 A 2d 786.
The developer distinguishes Texas Eastern on the grounds that the pipeline was the entire project and that it could fully function for its intended use without any other construction. The essence of the Centennial Pointe subdivision, however, is the construction of 101 homes, and since no homes existed to utilize the site improvements as of January 1, 1997, such improvements were not substantially ready to be used for their intended purpose of benefitting the homes and their prospective occupants as of that date.
The developer relies on Beranto Towers v. City of Passaic, 1 N.J.Tax 344 (Tax 1980) and Litton Business Systems, Inc. v. Moms Plains Bor., 8 N.J.Tax. 520 (Tax 1986), aff’d 9 N.J.Tax 651 (1988) in support of its position. In Beranto Towers, Judge Crabtree invalidated an added assessment made on a high-rise luxury apartment building, where only fifteen units out of a projected 120 rental unif were habitable as of the requisite date, and there were numerous fire and safety violations at that time. *165 He noted that the only reported case construing N.J.S.A. 54:4-63.1 in almost twenty nine years was Texas Eastern Transmission Corp. v. East Amwell Tp., supra, 82 N.J.Super, at 593, 198 A.2d 786, and concluded that it “provides no edifying analogy in aid of decision in the case SUB JUDICE.” Id. at 348. Instead, he adopted the “economic viability test” used by the New York Court of Appeals and New York Supreme Court, Appellate Division, in construing legislation dealing with readiness for occupancy for tax assessment purposes, and held that in determining whether a newly erected structure is “completed” or “substantially ready for its intended use” within the purview of the added assessment statute,
the underlying test is whether construction has reached the point where an economically viable structure is in existence as of the critical cut-off date; and the failure to quality for a certificate of occupancy will not per se render the building not ready for occupancy for tax assessment purposes.
[Id. at 3491.
Judge Crabtree concluded that these principles recognized the “economic and fiscal reality” of the added assessment statutes, which permit a pro-rata assessment during the post-October 1 portion of the pretax year
to coincide with the point at which the assessed improvements impose their maximum burden on municipal services. That point is reached, in the case of a high-rise apartment, building, when the structure is ready to receive its tenants, whose residence within the boundaries of the taxing district requires police and fire protection, sanitation facilities and other governmental services. By the same token rental income from the finished structure provides the wherewithal to pay for the required municipal services through taxes.

[Ibid.]

In Litton Business Systems, Inc. v. Morris Plains Bor., supra, 8 N.J.Tax at 520, Judge Lasser applied the economic viability test of Beranto Towers and held that an office building was not substantially ready for its intended use as a corporate headquarters, even though its shell was completed, plumbing, HVAC system and elevator were operable, electricity had been brought in, and a temporary certificate of occupancy had been issued. The court rejected the municipality’s argument that the structure should be regarded as if it were a speculative shell building and was, therefore, substantially complete, since “[t]he statute creates *166 a functional test which must be applied to the use of the building.” Id. at 538. Since the building was constructed for use as a corporate headquarters by the owner, and as of the requisite date could not have been put to that intended use, it was not subject to an added assessment.
The court agrees with the developer’s analysis of Texas Eastern Transmission Corp. v. East Amwell Tp., supra, 82 N.J.Super. 593, 198 A.2d 786, and adopts the pragmatic “economic viability” and “functional use” tests applied by Judges Crabtree and Lasser in interpreting N.J.S.A. 54:4-63.1. Similar to Litton Business Systems, Inc. and Beranto Towers, the mere fact that the site improvements have been put in place does not mean that they are substantially ready for them intended use and, therefore, subject to an added assessment. The assessor’s own deposition undermines the municipality’s position in this regard. The assessor admitted in his deposition that the intended use of the site improvements is to benefit the homes, which could not be accomplished as of January 1, 1997, because no homes had been constructed as of that date. The deposition testimony can be summarized as follows:
1. The purpose of the sanitary sewer lien is to convey sanitary sewer from homes to be constructed to where the sanitary sewer material is to be treated. The sanitary sewer system cannot be used if not connected to a home.
2. The drainage system cannot be used if not connected to what is going to provide the drainage water.
3. The pulpóse of potable water lines is to deliver water to homes that are going to use the water. The system cannot be used if not connected to homes that are going to use the water.
4. The sewer and water lines were not ready to take any product through the lines as of January 1,1997.
o. As of January 1,1997, nothing existed to which the sewer and water lines could be connected and there was nothing for the lines to service or support: the roadway consisted of only a base coat of asphalt, construction of the houses had not even started, and there were no users at the site as of January 1,1997.
In addition, since all of the improvements are located in the right of way, pipes and utility lines would have to be laid to connect the systems with the individual homes aftpr they are constructed. For all of these reasons, the utility and drainage systems located in the right of way cannot be considered to be substantially ready *167 for their intended use by the homeowners of the subdivision as of January 1, 1997. Furthermore, since the intended use of the roadways, acknowledged by the municipality, is to provide future access to homes that will be built on the individual lots, without homes in place, the roadways and curbing cannot be deemed to be “completed” under the statutory definition.
In addition to not being ready for their intended use, the improvements did not place any additional burden on municipal services that would warrant the added assessment taxes. The . developer was still required to maintain the utilities and roadway so that the municipality’s Public Works Department did not have to enter onto the site, and there were no residences constructed which required police and fire protection or sanitation facilities.
It should be noted that the added assessment procedure is only an interim measure. The municipality increased the land value of the individual lots for the 1998 tax year as a result of the site improvements. As such, denying the municipality the opportunity to tax the subject utility and site improvements as an added assessment as of January 1, 1997 “does not unduly disturb the municipal fisc.” Litton Business Systems, Inc. v. Bor. of Morris Plains, supra, 8 N.J.Tax at 588.
Since the subject improvements are not “structures” which have been “erected,” and even if they were, they were not “completed” as of January 1, 1997, the added assessment was improper, and the developer’s motion for summary judgment will be granted.
In view of the court’s ruling, there is no reason to address the additional issue raised by the developer that an added assessment cannot be levied because the improvements are not located on its property, but, rather, are within the right of way dedicated for public use and accepted by the municipality.

 Since the site improvements are new, both counsel acknowledge that they have not been "added to or improved."