NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

## TAX COURT OF NEW JERSEY



**Kathi F. Fiamingo**
**Judge**

**120 High Street**
**Mount Holly, NJ 08060**
**(609) 288-9500 Ext 38303**

**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE TAX COURT
COMMITTEE ON OPINIONS**

October 2, 2017

Katelyn McElmoyl, Esq.
Parker McCay, P.A.
9000 Midlantic Drive, Suite 300
P.O. Box 5054
Mount Laurel, New Jersey 08054

Richard De Angelis, Jr.
McKirdy & Riskin PA
136 South Street
Morristown, New Jersey 07960

> Re:     Community Options Enterprises, Inc. v.
>          Evesham Township
>          Docket No. 010081-2016

Dear Counsel:

This letter constitutes the court's opinion with respect to Defendant's motion for summary judgment and Plaintiff's cross-motion for summary judgment. For the reasons explained more fully below, Plaintiff's cross-motion is denied and Defendant's motion is denied.

I.     Finding of Facts and Procedural History

The court makes the following findings of fact based on the submissions of the parties.

Plaintiff, Community Options Enterprises, Inc. ("Plaintiff") is the owner of the property located at Block 13.45, Lot 43 in Evesham Township ("subject property") which it purchased in November, 2014. When purchased the subject property was a single-family home, not eligible for

*

the property tax exemption under <u>N.J.S.A.</u> 54:4-3.6. Plaintiff is a 501(c)(3) exempt entity under section 501(a) of the Internal Revenue Code, and is incorporated in the State of New Jersey. The subject property was acquired by Plaintiff with the intention of placing its clients there to reside as part of the Plaintiff's housing program for developmentally disabled individuals.

In order to qualify for funding and licensure of the subject property, Plaintiff was required to submit a budget and program description to the State of New Jersey, Department of Human Services' Division of Developmental Disabilities ("DDD"), and show that its facility had three-quarters of its beds accepted by prospective clients. After acquiring the subject property Plaintiff began construction to bring the property into compliance with DDD requirements. From March 2015 through June 2015, Plaintiff provided tours and interviews to prospective clients at the property and interviewed prospective employees. Despite its efforts, Plaintiff was unable to secure commitments from a sufficient number of clients by October 1, 2015. As a result, there were no residents at the subject property as of October 1, 2015.

Defendant issued an assessment for the subject property for the 2016 tax year of $265,000 ($90,000 Land and $175,000 Improvements). Plaintiff appealed the assessment to the Burlington County Board of Taxation claiming an exemption pursuant to <u>N.J.S.A.</u> 54:4-3.6, and the Burlington County Board of Taxation affirmed the assessment. Plaintiff now seeks review of that determination in this court.

II.    Legal Issues and Analysis

A. Summary Judgment

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact challenged and the moving party is entitled to a judgment or order as

a matter of law." R. 4:46-2(c). In Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523 (1995), our Supreme Court established the standard for summary judgment as follows:

> [W]hen deciding a motion for summary judgment under Rule 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.

"The express import of the Brill decision was to 'encourage trial courts not to refrain from granting summary judgment when the proper circumstances present themselves.'" Township of Howell v. Monmouth Cnty. Bd. of Taxation, 18 N.J. Tax 149, 153 (Tax 1999) (quoting Brill, supra, 142 N.J. at 541).

"[T]he determination [of] whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Ibid. at 523.

The court concludes that there are genuine issues of material fact precluding the entry of summary judgment.

### B. Standard of Review

An exemption from taxation is a departure from the equitable principle that everyone should bear their just and equal share of the public burden of taxation. Princeton Univ. Press v. Princeton, 35 N.J. 209, 214 (1961); Princeton Tp. v. Tenacre Foundation, 69 N.J.Super. 559, 563 (App.Div.1961). Taxation is the rule and exemption is the exception to the rule. Princeton Univ. Press Supra. 35 N.J. at 215. This rule reflects the well-established policy that "the public tax

burden is to be borne fairly and equitably." International Schools Services v. West Windsor Twp., 207 N.J. 3, 15 (2011). For that reason, an entity seeking a tax exemption has the burden of showing its entitlement to the exemption. Ibid. The legislative design to release one from his just proportion of the public burden should be expressed in clear and unequivocal terms. Board of National Missions, etc. v. Neeld, 9 N.J. 349, 353 (1952). Thus, the burden is upon the claimant to clearly bring himself within an exemption provision. Ibid.

C. Discussion

To establish its right to a property tax exemption, an organization must satisfy the statutory three-part test that flows from N.J.S.A. 54:4-3.6. The Supreme Court has interpreted this test to mean that the organization must show that: (1) it is organized exclusively for a charitable purpose; (2) its property is actually used for such a charitable purpose; and (3) its use and operation of the property is not for profit. See N.J.S.A. 54:4-3.6; Advance Housing, Inc. v. Township of Teaneck, 215 N.J. 549, 567-568 (2013); see also Paper Mill Playhouse v. Millburn Twp., 95 N.J. 503, 506 (1984) (applying analogous three-pronged test to "moral and mental improvement" exemption of N.J.S.A. 54:4-3.6).

It is well-settled that property is assessable or exempt with reference only to its ownership and use on October 1 of the pretax year. Atlantic County New School, Inc. v. City of Pleasantville, 2 N.J. Tax 192, 197 (1981); Emanuel Missionary Baptist Church v. City of Newark, 1 N.J. Tax 264, 266 (1980); Jabert Operating Corp. v. Newark, 16 N.J.Super. 505 (App.Div.1951) ("it must be noted that the taxable or nontaxable status of property in this State relates to October 1 of the pretax year since it is the use of property on that date which determines whether the property is or is not exempt for the tax year."). In the present matter the parties do not dispute that Community Options satisfies part (1) and part (3) of the Paper Mill statutory three-prong test. Where the parties

disagree is whether the property was "actually used" for charitable purposes as of October 1, 2015. A key distinction in the determination of whether the exemption applies is to observe "the use of the property, not the status or character of its owner." Emanuel Missionary Baptist Church, Supra, 1 N.J. Tax 264, 268. Mere intent to use property for a qualifying charitable purpose without more is not enough to warrant the exemption under N.J.S.A. 54:4-3.6. Grace & Peace Fellowship Church, Inc. v. Cranford Twp., 4 N.J. Tax 391, 400 (1982). However, where the taxpayer "has accomplished all that could be done to provide the public benefit contemplated by the exemption provision," the taxpayer has satisfied the actual use prong. Id. at 400; Trenton Ladies, etc. v. Trenton, 19 N.J.Misc. 176 (1941).

Here, Defendant argues that Plaintiff was not in "actual use" of the property as defined under the exemption statute. Specifically, Defendant avers that (1) the subject property was not approved by the DDD to be used as a group home as of the assessment date, (2) the subject property was not outfitted to receive and house residents, and (3) Plaintiff did not have residents committed to move into the property on that date. Therefore Plaintiff was not entitled to the exemption for the 2016 tax term. Plaintiff does not dispute that no proposed residents were committed to moving into the property on October 1, 2015, but does deny that the property was not outfitted or prepared to receive residents. Further, it appears that Plaintiff may not have obtained a license to operate the subject property as a group home as of October 1, 2015, because it did not yet have commitments for three-quarters of its beds. Plaintiff alleges that it had completed construction by August 2015 and that it was prepared to accept residents by October 1, 2015, but that it was not licensed by the State because two of the required three registered residents withdrew from the program.

In Grace & Peace Fellowship Church the court distilled that the "single thread that runs through the cases," surrounding the N.J.S.A. 54:4-3.6 "actual use" prong of the exemption was that "actual public use or being ready to provide such public use is the required quid pro quo." Grace & Peace Fellowship Church, Inc. v. Cranford Twp., 4 N.J. Tax 391, 399 (1982). In Trenton Ladies Sick Benefit Soc. v. Trenton, 19 N.J. Misc. 176, 177 (1941), it was clear that the organization had "a fully operating institution, ready and waiting to expend its charitable endeavors on those who might apply for them," and that "The machinery of charity operating prior to October 1 . . . found no object for its beneficence." Id. Similarly, Plaintiff alleges it did everything it could to ready the subject property for its charitable purpose, by retrofitting the subject property, conducting interviews, and submitting proposed residents to the DDD. Only the fact that there were no takers of Plaintiff's charitable efforts prevented it from fully realizing their charitable endeavors by October 1, 2015. Thus, Plaintiff's lack of licensure and lack of residents itself does not prevent a finding of "actual use" within the meaning of the exemption statute.

However, the parties disagree as to when the construction on the property was finished, and therefore disagree on whether the property was ready and able to house residents for its stated charitable purposes. Plaintiff certifies that construction on the property was completed by August of 2015. Defendant certifies that construction was still underway as of October 1, 2015. Buildings that are under construction at the time of the assessment date have been consistently held not to satisfy the "actual use" standard of N.J.S.A. 54:4-3.6, even if other charitable purposes are occurring on the premises. Institute of Holy Angels v. Fort Lee, 80 N.J.L. 545 (1910); Longport v. Bamberger Seashore Home, 91 N.J.L. 330 (1917); YWCA v. Orange, 3 N.J.Misc. 404 (1925). A building that is under construction which is not suitable to house residents cannot be considered to fall under the exemption's "actual use" provision. Grace & Peace Fellowship Church, Inc. v.

Cranford Twp., 4 N.J. Tax 391, 398 (1982). Plaintiff must be ready to perform its charitable function, so that the State is receiving a valued consideration for its grant of the exemption. Id. For the exemption to apply there must be more than just intent to use the property for the exempt charitable purpose. Holy Cross Precious Zion Glorious Church of God v. Trenton City, 2 N.J. Tax 352, 357 (1981). In Holy Cross the court found "that the exemption does not apply to property under construction, or even to property which is fully built but not yet open for use." Id.

If construction was continuing on October 1, 2015 then Plaintiff's intent to house residents would have been impossible to achieve despite the fact that it was conducting interviews and giving tours. Since it would not have been open to the public, its actions would have constituted mere intent rather than "actual use" of the property. If the charitable use of the building is impossible then "the legislative reason actuating the concession [must] cease with it." YWCA v. Monmouth Tax Bd., 92 N.J.L. 330 (1919). The parties dispute the end date of the construction that was being done to bring the building into compliance with the DDD's regulations to make it suitable for residents to inhabit it. Since the date the construction was finished is a key material fact in dispute, it must be resolved before a determination as to whether the property's use complied with the statutory exemption for the 2016 tax year can be made.

III. Conclusion

A genuine issue of material fact is in dispute in this matter. As a result the matter is not ripe for summary disposition. Both Defendant's motion and Plaintiff's cross-motion for summary judgment are denied.

Very truly yours,

Kathi F. Fiamingo, J.T.C.